706 So.2d 43 (1998)
Edna Faye COX, Appellant,
v.
Pamela Mark BURKE and Thomas E. Gordon, Jr., Appellees.
No. 96-2835.
District Court of Appeal of Florida, Fifth District.
January 23, 1998.
Rehearing Denied March 5, 1998.
*44 Joel S. Perwin, of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., and Wagner, Vaughan, & McLaughlin, P.A., Tampa, for Appellant.
Donald L. O'Dell and Nicholas A. Shannin, of McDonough, O'Dell, Beers, Wieland, Williams & Krakar, Orlando, for Appellee, Pamela Mark Burke.
George E. Carr, of O'Neill, Chapin, Marks, Liebman, Cooper & Carr, Orlando, and Kelvin L. Averbuch, Lake Mary, for Appellee, Thomas E. Gordon, Jr.
GRIFFIN, Chief Judge.
Edna Faye Cox ("Cox"), plaintiff below, appeals a final order dismissing her legal malpractice action against defendants Pamela Mark Burke ("Burke") and Thomas E. Gordon ("Gordon") based on her fraud in the conduct of the litigation.
Attorneys Gordon and Burke had agreed to represent Cox on a contingent fee basis in an underlying medical malpractice claim resulting from a slip and fall while in the care of the Orlando Regional Medical Center ("ORMC"). Cox instituted the suit below for legal malpractice after Burke informed her, the day after the statute of limitations on her claim against the hospital expired, that she had decided not to handle the case after all.
After approximately one year of litigation, defendants began filing motions seeking to convince the trial court to dismiss Cox's action against them on the ground that false and inconsistent information provided by Cox had prevented them from obtaining information necessary to adequately defend the claim. A brief discussion of these categories of discovery follows.

1. Identity

In her interrogatories, her deposition, and in an affidavit, Cox swore that her married name was Edna Faye Cox, that her ex-husband was Foster Cox, and her maiden name was Edna Faye Mullins. She also claimed that a man named Clifford Allen was her second cousin and not her husband, and she never assumed any names other than those listed, including the name Edna Allen. She also swore that she was born on October 9, 1939.
Cox testified that she moved to Florida in the 1980's from Michigan after her divorce from Foster Cox in order to care for Clifford Allen's aging parents living at 1007 San Domingo, in Pine Hills, Florida. When Mr. Allen passed away, he left his home to Clifford and his two sisters in equal shares but his dying wish to his son was for Cox to live in the house as long as she wanted. Cox testified in her deposition that since then she has lived at 1007 San Domingo as a single woman and has not heard from her ex-husband, Foster Cox, for many years.
Property records reflect that, in July of 1988, Clifford Allen's two sisters deeded their share in the Allen home to Clifford Allen and a woman named Edna Allen as husband and wife. Clifford testified in his deposition, however, that Edna Allen was not his wife but his long time girlfriend, Edna Bates. Since the couple had planned on marriage, she used his last name on the deed. Four years later, on June 1, 1992, Clifford and *45 Edna Allen as husband and wife conveyed the property to Edna Cox. Shortly thereafter, on November 1, 1992, Cox re-conveyed the property back to Clifford and Edna Allen. Cox, however, continuously resided there.
Cox swore in her affidavit that she believed Edna Bates a/k/a Edna Allen to be a woman married to her second cousin Clifford. Defendants contend, however, that Edna Faye Cox and Edna Allen are the same person. They offer the opinion of an handwriting expert that the signatures of Edna Cox and Edna Allen on the deeds transferring property from the Allens to Cox, and back again, are by the same person.
Cox testified in her deposition that the Allens lived around the corner from the San Domingo property in Pine Hills on "San Anita Street." No street by that name, however, exists in Pine Hills. After defendants discovered and pointed out this fact, Cox filed an affidavit stating that the Allens lived at 1325 Santa Barbara, in Orlando. No such address, however, exists. Clifford Allen testified that from 1994 to 1996 he had lived in a trailer park at Rio Grande and 33rd Street and before that he had no addressthat he just moved around from motel to motel. He was unable to name any of these motels but he testified none of these motels are in Florida.

2. Driver's Licenses

Cox testified in her deposition that the Allens would often drive her places because she did not hold a valid driver's license. She testified that she let her Michigan license expire and did not attempt to renew it or attempt to obtain a Florida driver's license for medical reasons. Defendants discovered, however, that Cox obtained a Michigan license in September, 1995, under the name "Edna Faye Cox" with a birth date of October, 1939. Cox later submitted an errata sheet to her deposition acknowledging that she had renewed her Michigan license by mail.
Defendants also discovered four additional Florida licenses they attribute to Cox: (1) a license issued in 1989, to "Edna Mullins," a white female, 5'3", born on October 8, 1939, residing at 1007 San Domingo; (2) another license issued sixteen days later to "Edna Allen," a white female, 5'3", born on October 8, 1939, residing at 1007 San Domingo; (3) a license issued in 1994, to "Edna Faye Allen," a white female, 5'3", residing at the same address; and (4) a valid license issued in 1995 (with an expiration date of 2001) to "Edna Allen f/k/s Edna Mullins," a white female, 5'3", residing at the same address. The photograph of the license holder on all of these licenses is the same woman, appellant Edna Cox. The proffered explanation for this is that Cox had agreed to help Edna Bates/Allen obtain a Florida driver's license in the name of Edna Allen so that the Allens could obtain a homestead exemption on the San Domingo property. Both Clifford Allen and Edna Cox claim not to know where Edna Bates/Edna Allen can be found.

3. Social Security Numbers

The social security number Cox initially gave in discovery was incorrect. Cox swore that her social security number was XXX-XX-XXXX. After this was shown to be wrong, Cox testified in her deposition that she was rushed when she filled out her interrogatories and would have to check on the accuracy of the number. Cox later filed an errata sheet claiming that her mother erroneously provided her with her brother's number and the correct number was actually XXX-XX-XXXX.

4. Prior Injuries

Cox testified in her deposition that she had not sustained any fractures or other injuries from a fall or other trauma prior to her accident at ORMC. Cox also denied any treatment by an orthopedist prior to her fall in October, 1990.
Defendants, however, discovered medical records that confirmed that Cox had been treated for various fractures and traumas before and after her fall at ORMC. For example, Cox was treated: (1) in May 1990, for a fractured wrist and ribs resulting from a fall off a ladder; (2) a compound fracture of her right elbow in 1983; and (3) injuries sustained when she was pinned under a car *46 tire for which she sought treatment from an orthopedist for pain in her right hip in 1985. The defendants also discovered that records documented treatment for spinal arthritis in 1986 and physical therapy to relieve pain that "crippled her" in 1990.
At the hearing on defendants' final motion to dismiss Cox's complaint with prejudice, inconsistencies in Cox's responses to discovery were outlined, along with other examples of appellant's lack of accuracy or truthfulness. The court dismissed the case.
Cox's counsel makes three principal arguments, two of which we reject out of hand. First, Cox argues that because the false information referenced above does not constitute a fraud on the underlying claims of legal malpractice or medical malpractice, dismissal is error as a matter of law. It is true that the alleged misrepresentations do not concern the issues of liability on the medical or the legal malpractice claims and, on the surface, both claims appear legally sufficient and factually supportable. The misrepresentations do go directly to the issue of damages, however. The ability to find records and witnesses that might shed light on the issue of any damages suffered by Cox is as critical to the defense of the case as is the issue of liability itself. Second, Cox argues that the volumes of medical records defense counsel has found show that the defendants have not been hampered in their discovery. Apart from the irony of the argument that Cox should not be punished because she failed to deceive, it is impossible to know what defendants may not have found. The closer question raised by Cox is how material, pervasive or extreme such false statements or material omissions in discovery must be in order for the extraordinary measure of dismissal to be justified.
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because "dismissal sounds the `death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118. The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id.; Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994).
Defendants rely mainly on the third district's holding in O'Vahey v. Miller, 644 So.2d 550 (Fla. 3d DCA 1994), review denied, 654 So.2d 919 (Fla.1995), for the proposition that lies made under oath by personal injury plaintiffs about personal background and education necessitate dismissal with prejudice. In that case, the court held that the plaintiff's repeated lies in discovery, uncovered only by "the assiduous efforts of opposing counsel" had "constituted such serious misconduct" that dismissal of his case was warranted. Id. The court further noted that although the subject of the plaintiff's perjury did not touch on the cause of the action itself, dismissal was still appropriate. Unfortunately, what facts constituted "such serious misconduct" in O'Vahey to require dismissal are not disclosed.[1] In Mendez v. Blanco, 665 So.2d 1149, 1150 (Fla. 3d DCA 1996), the court held that the trial court did not abuse its discretion in dismissing plaintiff's complaint where he "committed serious misconduct by repeatedly lying under oath during a *47 deposition." See also Figgie Int'l, Inc. v. Alderman, 698 So.2d 563 (Fla. 3d DCA 1997); compare Millan v. Williams, 655 So.2d 207, 208 (Fla. 3d DCA 1995).
In Kirby v. Adkins, 582 So.2d 1209 (Fla. 5th DCA 1991), this court reversed the trial court's dismissal of the plaintiff's complaint in that case when the plaintiff perjured herself in court concerning her marital status. This court referenced the third district's holding in Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978) that, although the trial court's findings constituted a basis on which it could be inferred that plaintiff's claimed injuries were feigned, the matter should be left to the jury where such inference was by no means overwhelming and the matter was fairly debatable. We also relied on an earlier third district case, Parham v. Kohler, 134 So.2d 274 (Fla. 3d DCA 1961), a factually similar case which involved the false assertion of marriage in support of a consortium claim. Kirby and Parham differ from the present case because the false testimony in those cases did not affect the plaintiff's own claim; it supported the false claim of a putative husband. If the party's false testimony is collateral to the claim or defense that he or she is asserting, the remedies are appropriately limited to those discussed in Parham. However, where a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper. Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011 (Fla. 4th DCA 1997).
In this case, there is a good deal that Burke and Gordon put forth as "fraud" that is either not fraud or is unproven. Cox's use of multiple social security numbers over the years in her medical forms is an example of the former and the question whether Edna Cox and Edna Bates are one person is an example of the latter. Nevertheless, Cox clearly has been shown to have given many false or misleading answers in sworn discovery that either appear calculated to evade or stymy discovery on issues central to her case. The integrity of the civil litigation process depends on truthful disclosure of facts. A system that depends on an adversary's ability to uncover falsehoods is doomed to failure, which is why this kind of conduct must be discouraged in the strongest possible way. Although Cox insists on her constitutional right to have her case heard, she can, by her own conduct, forfeit that right. This is an area where the trial court is and should be vested with discretion to fashion the apt remedy. While this court might have imposed a lesser sanction, the question in this case is close enough that we cannot declare the lower court to have abused its discretion.
AFFIRMED.
DAUKSCH and ANTOON, JJ., concur.
NOTES
[1] The court noted that objective proof of serious injuries might be a factor in evaluating whether such serious sanctions would be within the court's discretion. In this case, the question of Cox's injury, if any, resulting from the alleged fall, was the subject of the false discovery.