854 So.2d 812 (2003)
Sal AMATO and Clara Amato, his wife, Appellants,
v.
Randolph J. INTINDOLA and City of Hallandale, Appellees.
No. 4D02-3366.
District Court of Appeal of Florida, Fourth District.
September 10, 2003.
Rehearing Denied October 10, 2003.
*813 Paul J. Kneski, Miami, for appellants.
Mark Goldstein, City Attorney, Hallandale Beach, for appellees.
WARNER, J.
In this personal injury action, the trial court dismissed appellant's complaint after concluding that he perpetrated a fraud on the court. The trial court's dismissal was based on a videotape taken by an investigator which depicted appellant performing several activities that he testified at his deposition that he was unable to perform. We adopt the analysis of Jacob v. Henderson, 840 So.2d 1167 (Fla. 2d DCA 2003), and reverse, holding that dismissal with prejudice as a sanction was an abuse of discretion.
Appellant, Sal Amato ("Amato"), age 76, was involved in an automobile accident with the city manager of Hallandale. Amato sued the City and its manager for negligence and alleged permanent bodily injury. Because of his claim, the City employed a private investigator who surveilled appellant and recorded his activity on two days approximately six months apart. On the tape of the first day, appellant is seen working on his truck, crawling partially underneath the vehicle, and changing a tire. On the tape of the second day, shot six months later, Amato is seen working around his home and climbing a ladder to the roof. While standing on the roof, he lifts some sort of electric motor to the roof with a rope and proceeds to clean out his gutters.
At his deposition, taken two days after the second videotape was made, Amato testified that, as a result of the accident, he suffered a recurrence of back problems from an earlier spinal surgery as well as problems with his knee which prevented him from twisting and required him to walk carefully. He claimed he could not go up or down stairs without pain, nor could he lift excessive weight. He also testified that while he had made repairs to his car in the past, since the accident he could only make simple repairs and would be unable to get under the car or change a tire. Amato also claimed that he could not perform home maintenance activities.
Based upon the apparent contradictions between Amato's deposition testimony and his activities depicted on the videotapes, the City of Hallandale filed a motion to dismiss, alleging that appellant "deceitfully utilize[d] the legal system by misrepresenting the scope and extent of his injuries." It argued that dismissal with prejudice was proper. The trial court conducted an evidentiary hearing, at which time the judge viewed the tapes but did so on fast forward because of their length.
Amato was then given the opportunity to explain his deposition testimony. He first explained that in his deposition he thought he was being asked whether he could change the oil in a car, which would require him getting entirely under the car. In the activity depicted on the first tape, Amato was not changing the oil, rather he was working with the starter which weighed only eight and a half pounds. Further, Amato said he did not lift the tire when putting it back on the wheel. As to climbing the ladder and cleaning the gutters, he said that he only went up and down the ladder twice, and it caused him *814 pain. He admitted that he hauled a motor onto the rooftop, but he did not say how much it weighed.
Amato's counsel argued that the videotape did not show intentional fraud. At most it revealed inconsistencies that the City could argue to the jury. He noted that the videotape could not show pain. Although the court viewed most of the videotape in fast forward, the court found the videotape and the deposition testimony to be completely contradictory. The court cited to appellant's testimony in his deposition that he could not climb stairs or bend, yet the videotapes showed him doing both of those activities. The court also pointed to Amato lifting the electric motor onto the rooftop when he testified that he could not lift excessive weight. The court cited Amato's testimony that he could not get underneath a car, change a tire, or repair a car, and concluded that the videotape of the car repair was in absolute contradiction to his deposition testimony. Concluding that the deposition testimony was nothing short of an attempt to perpetrate fraud on the court, the court dismissed the case with prejudice.
We have examined the videotape at regular speed, and we have read the deposition of the appellant. The videotapes do show the appellant working on his truck and climbing up on the roof. At regular video speed these activities are done relatively slowly. Amato appears to go up the ladder with effort, and it is impossible to tell from the tape the weight of the motor which he hauled to the roof. In the deposition, appellant testified that he could not go up and down stairs or an incline without pain. He did not testify, as the court stated, that he could not go up and down stairs at all.
The car repair on the video required the appellant to go under the left wheel well of the vehicle, but only the upper part of his chest and head are seen under the car. In each videotape he appears to walk with a slight limp. In the deposition he testified that he could not lift excessive weight, but he did not define what excessive weight was, although he denied that twenty pounds was excessive, depending upon how he lifted the weight.
A nearly identical situation occurred in Jacob v. Henderson. At trial, the plaintiff testified that she could not perform a number of tasks as a result of her injuries. The plaintiff obtained a verdict in her favor and both parties moved for a new trial, which was granted. Before the new trial, the defendant obtained surveillance videotape of the plaintiff performing the very same tasks that she testified she could not perform. The court reviewed the trial evidence and videotape and determined that the inconsistencies between the two amounted to fraud on the court. It dismissed the case with prejudice.
In reversing, the second district first relied on a more stringent abuse of discretion standard set forth in Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998):
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because "dismissal sounds the `death knell *815 of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118. The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id.; Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994).
The court reviewed the facts of the case, including the videotape and the deposition. The court noted that "[t]rial court rulings are given less deference when they are based upon the same cold document record that is before the reviewing court." Jacob, 840 So.2d at 1170 (citing Hervey v. Alfonso, 650 So.2d 644 (Fla. 2d DCA 1995)). Based upon that review, the court noted:
Mrs. Jacob either knowingly perpetrated a fraud, exaggerated her injuries, or unknowingly provided video evidence that her injuries are far less severe than she may believe. Only the first of these three possibilities would support the dismissal of all claims with prejudice. See Baker v. Myers Tractor Servs., Inc., 765 So.2d 149 (Fla. 1st DCA 2000) (affirming dismissal because plaintiff knowingly, intentionally, and repeatedly concealed prior injuries to gain an unfair advantage in litigation).
Id. at 1169. In that case there was no clear and convincing evidence that Mrs. Jacob had "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Id. (quoting Cox, 706 So.2d at 46). While the videotape could lessen her credibility when compared with her testimony at the first trial, it should be submitted to the jury to determine the truth or falsity of the claims.
This case is a mirror image of Jacob. Here, appellant testified that he could not perform certain tasks or could not perform them without pain. The videotape captured appellant performing some of those tasks, although it cannot show that he performed them without pain. Whether Amato's claims of the extent of his injuries are accurate is for the trier of fact. Jurors may look at the same evidence and conclude that although appellant may not be injured to the extent he believes, he still has suffered some disability from the accident. The evidence presented through the depositions and the video surveillance does not show a knowing and unconscionable scheme to interfere with the judicial system's ability to impartially adjudicate a proceeding. Therefore, the court erred in concluding that a fraud on the court occurred and that dismissal with prejudice was appropriate.
Appellee cites to Cox v. Burke in support of its position. However, the false answers given in Cox referred to such past personal information as the plaintiff's names, places of residence, and failure to divulge significant prior injuries, all of which prevented the defendants from conducting their investigation and defending the claim. 706 So.2d at 44-46. Similarly, in Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997), we held that the trial court properly dismissed a claim where the plaintiff lied in discovery about his educational background, a matter critical to the damages claim. In Morgan v. Campbell, 816 So.2d 251, 253-54 (Fla. 2d DCA *816 2002), dismissal was appropriate where the plaintiff lied about prior injuries and treatment. See also Distefano v. State Farm Mut. Auto. Ins. Co., 846 So.2d 572 (Fla. 1st DCA 2003). These are examples of knowing deception intended to prevent the defense from discovery essential to defending the claim. The facts of this case are distinguishable.
In most cases of personal injury there is a disparity between what the plaintiff believes are the limitations caused by the injuries and what the defense thinks. Many times surveillance tapes are used to show that the plaintiff can do more than what he or she states are the limitations. The fact that a surveillance tape shows discrepancies usually affects the jury's view of the case, but in this case it does not merit a dismissal with prejudice to appellant's case.
Reversed and remanded for further proceedings.
KLEIN and SHAHOOD, JJ., concur.