859 So.2d 574 (2003)
Aurelia RUIZ, Appellant,
v.
CITY OF ORLANDO, Appellee.
No. 5D03-248.
District Court of Appeal of Florida, Fifth District.
November 21, 2003.
Michael Manglardi, of Attorneys Trial Group, Orlando, for Appellant.
Walter A. Ketcham, Jr., and Ramon Vazquez, of Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., Orlando, for Appellee.
GRIFFIN, J.
Appellant, Aurelia Ruiz ["Ruiz"], appeals the trial court's dismissal of her suit against the City of Orlando ["the City"] because she had attempted to perpetrate a fraud on the court. Because the record does not establish fraud on the court, we reverse.
Seventy-two-year-old Ruiz filed a complaint against the City alleging that it negligently repaired or maintained a section of Mercado Ave. She claimed that she was injured when the vehicle in which she was a passenger hit a pothole, or dip, in the road.
When the City deposed Ruiz, she claimed to have suffered re-injury of a previous prolapsed vagina and a back injury. Defense counsel asked:
Q. Before your accident of September 5, 2000, had you ever suffered an injury to your back?
A. No.
Q. Had you ever been told that you had a compression fracture or a broken vertebra in your back before this accident?
A. No. I had an accidentexcuse me. I had an accident in 1963, but it didn't cause any injury to the back, it caused injury to the neck bone.
Q. Was it an auto accident?
A. Yeah.
Ruiz said she could not remember the name of the hospital on Long Island where she had been treated in 1963. When counsel asked Ruiz if she had ever had any back problems, as opposed to an "injury," she replied "I have arthritis." She testified *575 that her family doctors treat her for the arthritis with painkillers.
The City filed a motion to dismiss with prejudice alleging that Ruiz had committed fraud regarding her medical history. The City alleged that in her July 31 deposition, Ruiz had denied that she had suffered a back injury prior to the September 5 accident. Although Ruiz had admitted to being in an automobile accident in 1963, she said that only her neck, and not her back, had been injured. The City argued that Ruiz' medical records proved that she had injured her "back" in the 1963 accident.
The City attached to its motion the excerpt from Ruiz' deposition. The City also submitted a copy of a Florida Hospital Emergency Physician Record, which appears to have been completed based on information received from Mrs. (or Mr.) Ruiz on the day of the pothole accident. The phrase "prior back injury" is circled under the "past history" section and "1963" is written next to it. The phrase "prior back pain" was also circled with arthritis written underneath it. The report also contains a notation under "similar symptoms" that Ruiz had a history of arthritis.
The City also submitted a computer generated copy of a lumbrosacral spine exam done the day of the accident. Dr. Galen C. Le, M.D., a radiologist, found that Ruiz' exam showed a "mild to moderate compression fracture of T12 upper endplate which is probably old ... There is mild narrowing of the L2-3 discs.... There is diffuse osteopenia.[1] There is mild scoliosis of the lumbar spine, convexed to the left. Mild spurring is noted along the lumbar spine laterally."
The City also submitted a patient history for Ruiz that was written in Spanish and dated June 11, 1993. A translator provided a written translation of several statements in which Ruiz stated that she had a previous automobile accident in which her neck and back "suffered much."
Dr. F.J. Schroeder, an orthopedic surgeon who saw Ruiz after the accident, noted in his report that Ruiz' x-rays reveal that she had a compression fracture at T-12, age undetermined. He also noted, however, that upon review of a lateral x-ray of the thoracolumbar spine which revealed the compression fracture at T-12, he suspected that it was acute.
Based on this record, the trial court found that Ruiz had committed fraud on the court and dismissed her lawsuit. During the hearing, the court remarked that Ruiz' "lengthy medical records suggest to me that she was well aware of her back pain and that she deliberately concealed it. And when asked twice about it in this deposition, she declined to say that she had the back injury. She said she had arthritis."
Cox v. Burke, 706 So.2d 43 (Fla. 5th DCA 1998), is the leading case in this district governing the dismissal of civil lawsuits based on fraud. In Cox, we anticipated, although we apparently underestimated, the seductive power of this remedy. We took pains to try to express how narrow it should be:
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case *576 for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because "dismissal sounds the `death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118. The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id.; Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994).
Id. at 46. Perhaps, by finding that the trial court's order of dismissal in Cox was within the limits of the trial court's discretion, we sent a mixed message. As Judge Casanueva pointed out in Jacob v. Henderson, 840 So.2d 1167, 1170 (Fla. 2d DCA 2003), the decisions of trial courts are given less deference when the record on which the decision is based is the same. In Cox, we expressed doubt about the trial court's decision to dismiss, but because it was a very close case, we deferred to the trial judge's judgment. 706 So.2d at 47.
Cox presented an extremely unusual fact pattern, wholly unlike the more conventional impeachment issues that have shown up in some more recent decisions, including this case. In Cox, there was a significant amount of evidence suggesting that the court could not even be confident of who the plaintiff was, much less what had happened to her. In that case, the false information given was pervasive, repeated and under oath.
Whatever facts may reach the narrow test set out in Cox, this case does not come close. Thus far, the record suggests only that Mrs. Ruiz has made conflicting statements. It is not proved that she has falsely testified to the true extent of her injuries in 1963 or that she is guilty of a knowing misrepresentation. As Judge Casanueva noted about the Jacob dismissal, this evidence wouldn't even support a summary judgment or directed verdict. As far as we can tell, Mrs. Ruiz was not re-deposed to admit, deny or explain the fraud claim and there is no other evidence in this record to show the true extent of her injuries in 1963.
Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, even false statements are well managed through the use of impeachment and traditional discovery sanctions. See Amato v. Intindola, 854 So.2d 812 (Fla. 4th DCA 2003). The record in this case does not demonstrate clearly and convincingly a knowing and unreasonable scheme to interfere with the judicial system's ability to impartially adjudicate the claim of Mrs. Ruiz. Id. We accordingly reverse and remand for reinstatement of the lawsuit.
REVERSED and REMANDED.
SHARP, W., and PETERSON, JJ., concur.
NOTES
[1] Osteopenia is a decrease in bone mass.