962 So.2d 1059 (2007)
Brian GEHRMANN, Appellant,
v.
CITY OF ORLANDO, Florida, Appellee.
No. 5D06-3528.
District Court of Appeal of Florida, Fifth District.
August 24, 2007.
David R. Heil, of David R. Heil, P.A., Winter Park, for Appellant.
Martha Lee Lombardy, Assistant City Attorney, Orlando, for Appellee.
GRIFFIN, J.
Appellant, Brian Gehrmann ["Gehrmann"], appeals the order dismissing his personal injury case with prejudice based on fraud. We reverse.
On October 28, 2003, Gehrmann was involved in a collision with a City of Orlando Police Department patrol car. At the time of the accident, Gehrmann, a plumber, was returning from an out-of-town job. He suffered a herniated disc at the L5-S1 level as a result of the accident.
He was treated by several doctors. Gehrmann's lawyer referred him to Dr. Oliveros on November 3, 2003. In the medical history given to Dr. Oliveros, Gehrmann disclosed previous chiropractic *1060 treatment for low back pain as the result of a workplace accident some five years earlier. Gehrmann also informed Dr. Oliveros that he had no reoccurring back problems until the current injury. On the patient questionnaire for Dr. Oliveros that Gehrmann completed, he checked "no" to the question asking if he had "similar complaints in the past."
Gehrmann was later treated by Dr. Broom. At the initial visit, Gehrmann denied any previous injury to his neck or back. The history questionnaire asked, "have you had any history of neck or back pain in the past?" Gehrmann responded negatively.
Gehrmann filed the present negligence suit against Appellee, the City of Orlando ["the City"]. Through its own efforts, the City obtained some worker's compensation billing records and learned that Gehrmann had two prior incidents in South Florida involving his back, one in 1993 and the second in 1995. Both incidents were workplace events and workers' compensation claims were filed. In 1993, Gehrmann received three treatments with a chiropractor for a total bill of $304. In 1995, he saw an orthopedic physician one time. The bill was $76.
As a result of this accident, Gehrmann's deposition was taken twice, once in this case and once in his worker's compensation case. At the deposition in his workers' compensation case, the following exchange took place between counsel for the employer and Gehrmann:
Question: Tell me about any treatment with any doctors before October of 2003?
Answer: I don't recall any doctors, other than a checkup.
Question: Any physical injuries, which required medical attention before October 2003?
Answer: No.
Question: Any other work injuries?
Answer: No.
Similarly, the following exchange occurred between Gehrmann and the City's attorney in the present case:
Question: Before this accident had you had any other on-the-job accidents?
Answer: Yes.
Question: Things that you filed as a workers' compensation claim, in other words?
Answer: No.
Question: Nothing else that was actually filed as a comp claim?
Answer: Yes.
Question: But you did have some accidents?
Answer: Yes.
Question: Tell me about the one you had just before this one. We'll sort of work our way back.
Answer: That was quite a few years ago, maybe 15 years ago.
Question: What happened?
Answer: I had a torch blow up inside a bathtub.
Question: What kind of injuries did you get?
Answer: Burns.
Question: Prior to that accident did you have any other workers' comp  or work-related accidents, rather?
Answer: No. Other than typical stuff, you know, a little cut here, a little bang, bruise.
Question: Did you have any back problems prior to this accident?
Answer No.
Question: You never hurt your back playing sports at all?
Answer: No.
Also, as part of the discovery process, an independent medical exam was performed on Gehrmann by Dr. Murrah. Gehrmann *1061 again denied any prior history of treatment for a back injury, but he acknowledged having occasional back pain prior to the accident. Dr. Murrah noted: "From my review of the radiographic studies, and by the patient's own account, there were some preexisting back problems which were present at the time of his motor vehicle accident on 10/28/03. He acknowledges intermittent pain although he never sought medical treatment."
After finishing its discovery, the City filed a motion to dismiss with prejudice for fraud. The City contended that Gehrmann had repeatedly failed to disclose the existence of the 1993 and 1995 accidents, the nature of the injuries and the medical treatment sought. The City also pointed out that no record had been found of the chiropractic care "five years earlier" that he had mentioned to Dr. Oliveros. In response, Gehrmann filed an affidavit addressing the incidents in 1993 and 1995. He claimed that he had forgotten those incidents during his deposition because they were minor events and they merely involved being "checked out" by a doctor and did not involve any continuing problems. After the parties presented arguments, the trial court granted the City's motion and this appeal followed.
"[B]ecause dismissal with prejudice for fraud on the court is such an extreme remedy; the fraud must be demonstrated by clear and convincing evidence." Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003). Thus, a party moving to dismiss for fraud on the court must satisfy a stringent standard. Dismissal for fraud is appropriate where "`it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.'" Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998); see also Amato v. Intindola, 854 So.2d 812, 814-15 (Fla. 4th DCA 2003) (quoting and applying Cox); Hogan v. Dollar Rent A Car Sys., Inc., 783 So.2d 1211, 1212 (Fla. 4th DCA 2001) (dismissal for fraud appropriate where misrepresentations were made "to intentionally thwart defendants from conducting discovery") (citation omitted); Rios v. Moore, 902 So.2d 181, 183 (Fla. 3d DCA 2005) (dismissal for fraud on the court should be "`cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion or other similar wrongdoing'") (citation omitted). The clear and convincing evidence necessary to succeed on a motion to dismiss for fraud on the court must demonstrate that the plaintiff "committed knowing deception intended to prevent the defense from discovery essential to defending the claim." Amato, 854 So.2d at 816.
Cox and Ruiz v. City of Orlando, 859 So.2d 574 (Fla. 5th DCA 2003), are the leading cases in this district governing the dismissal of civil lawsuits based on fraud. In Cox, we tried to define a narrow remedy:
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. *1062 Id. at 1117-18. Because "dismissal sounds the `death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118. The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id.; Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994).
Id. at 46. In Ruiz, we acknowledged that Cox had not been applied as narrowly or cautiously as this Court intended. Ruiz, 859 So.2d at 576. We also said:
Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, even false statements are well managed through the use of impeachment and traditional discovery sanctions.
Id.
The circuit court decided to dismiss Gehrmann's complaint with prejudice because of discrepancies between his discovery responses and the evidence developed by the City in its investigation of his claim. No witnesses testified at the hearing on the motion to dismiss. In our view, there is simply no factual basis to conclude that Gehrmann gave inaccurate answers with the intent to defraud and no legal basis to consider that the inaccuracies in his testimony rise to the level that would support dismissal. The decision to deprive a party of his right to have his case determined by a jury should be made only on a clear showing of egregious conduct. This is a case where allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment.
REVERSED and REMANDED.
TORPY, J., and GRAHAM, R.S., Associate Judge, concur.