BERGER, J.
Antonio Jimenez appeals the entry of a final judgment in favor of Pedro Ortega. He argues the trial court erred by failing to "dismiss Ortega’s négligence complaint as a sanction for committing fraud upon the court. We agree only as to Ortega’s claims for pain and suffering and loss of earnings.
This case arises out of a negligence suit filed by Ortega against Jimenez after Ortega sustained a serious injury to his heel in a car accident caused by Jimenez. Ortega sought damages for the total loss of his pickup truck, medical costs, lost wages, and past and future pain and suffering. Neither liability nor the costs Ortega sought for medical expenses and the damage to his truck were disputed. Jimenez contested only the damages for lost wages and pain and suffering. Through these very damages, Jimenez claims Ortega perpetrated his fraud.
Over the course of the pre-trial proceedings, Ortega was deposed three times. Throughout each deposition, Ortega gave false or misleading answers to questions central to the disputed issues in his cáse: namely, regarding the extent, duration, and severity of his pain and suffering and his ability to work.
. During his first deposition, in September 2006, Ortega sought to establish and embellish the extent of his injuries. After Ortega’s deposition, Jimenez’s counsel hired an investigator to perform surveillance on Ortega. The surveillance video showed Ortega pulling his trash can up the. driveway while carrying, but not using, his cane; driving his stick-shift Jeep; walking *485 in front of a tool shed to a hot water heater without using his cane; and driving his Jeep to a water sports. boat store, although Ortega was using his cane when walking around the store.
Thereafter, Ortega was deposed a second time, and had to be prompted by his attorney to clarify the extent of his injuries. He testified • that he had to use a cane to walk outdoors; he needed to hold onto furniture to walk around the-house without his cane; he could not walk more than three feet without using his cane; he was constantly in pain even in bed; he could not fish; and he could not step up or down on curbs on a street, Ortega was then asked to describe the severity of pain in his foot. Ortega testified that, on a scale from one to ten, the pain level'in his foot was a “five” when sitting and a “nine” when walking.' He' further testified that his foot was swollen all of the time, and that the pain in his foot shoots up to a “ten” after he walks one, or two hundred feet. According to his. testimony, he would lose balance frequently when walking, due to the pain,he was experiencing. He testified that he could not perform any kind of job, not even a desk job, because he had too much pain and swelling in his foot. Ortega testified that he discussed his pain, swelling, and limitations with his treating physician during office visits. ‘
Six years later, in October 2013, Ortega was deposed a final time. After Ortega testified that the severity of his pain and the extent of his physical limitations were essentially the same as he had described in his first'two depositions, Ortega’s counsel asked to take a break. When the deposition resumed, Ortega revised some of his earlier answers. Specifically, Ortega testified that he did, in fact, go fishing about once every two weeks in the summer and once a month in the , winter. He claimed that he had only been previously speaking about his inability to fish in 2007. Ortega further admitted that-he owned two boats, which he kept at his property in Geneva, Florida. When asked if he could drive a stick shift, Ortega responded, “well, maybe.” He explained that he sold his Jeep about five years ago because it was a standard- transmission and he could not use the clutch because of the severe pain in his foot.
Soon after his deposition, Ortega’s counsel filed an errata sheet revising Ortega’s deposition testimony. Specifically, Ortega clarified that: (1) he only used the cane when he was in a lot of pain or he knew he would be walking a lot; (2) he could actually walk more than three feét without using his cane; (3) he no longer needed to use the furniture in his house to' help him get around; (4) when he walked more than three feet the pain level'in his foot was a “five to six,”' rather than an “eight to nine”; (5) he lost his balance only after walking long distances; (6) he had pain in his foot only when he walked long distances; (7) he could mow his lawn using a riding lawn mower; (8) he could paint; (9) he was able to resume fishing on his boat more thán two years ago; (10) he had a boat at his Geneva property for more than two years; and (11) he could fix the holes in the second boat that' he had recently purchased.
Thereafter, the case proceeded to trial on the issue of damages. Ortega testified about breaking the calcaneus bone in his left foot and the surgery that followed. He testified he was initially confined, to a wheelchair, then a walker, and finally was able to walk with a cane. During that period, Ortega stated he relied on his wife to help him with basic activities. After his second surgery, Ortega was in a cast for “about a year.” He testified that, as of the date of the trial, he still felt pain in his foot when he walked for long periods of time.
*486 When the testimony turned to Ortega’s quality of life since the accident, he admitted that he lied in his October 2013 deposition when he testified regarding the level of pain in his foot. Ortega testified that his pain was not at level eight or nine as previously stated, but- rather more “like three to four,” and that he takes over-the-counter Advil for the pain.
On cross-examination, Ortega acknowledged that surveillance video showed him driving his stick-shift Jeep despite the fact that he had testified during, his depositions that he could not drive a stick shift.[1] Ortega then admitted that the following testimony from his second deposition was untrue: (1) he had to use the cane to walk whenever he was outside; (2) he could only get around his house without his cane by holding onto., furniture for help; (3) he could not walk more than three feet without using his cane or he would lose his balance and fall; (4) he was in pain constantly, even when in bed; (5) he told his doctors that he had balance problems and that, if the doctors’ notes did not reflect his complaint, the notes were wrong; (6) his foot was in, such pain that it hurt to take off his sock; (7) he had swelling in his foot; (8). he had so much pain in his foot that he lost his balance on a daily basis; (9) .he would fall over from pain after walking ten to twenty feet (when in reality he could walk about forty-five minutes before falling over in pain); (10) he had pain in his foot when he used his full range of motion; (11) he had pain when transitioning from heel to toe; (12) he could not fish; and (13) he could not step up or down off of curbs on the street.
Ortega also admitted on cross-examination that the following testimony from his third deposition was untrue: (1) he could not walk more than three feet without a cane due to his pain and instability; (2) he experienced a sharp, stabbing pain in his foot; (3) when he was resting, the pain in his foot was a level five on a scale of one to ten; (4) he could not enjoy life because of the pain in his foot; (5) he had so much pain in his foot when he walked that he would grimace due to the pain; and (6) he still could not drive a stick shift. Ortega admitted that surveillance photographs showed him driving his stick-shift Jeep, looking at boats in a boatyard, and walking around without a cane. He also admitted that, since the accident, he had been able to enjoy interacting with his family and friends. Specifically, Ortega admitted that he had gone on multiple vacations and enjoyed parties with his friends. On cross-examination, he admitted he had not been truthful during, his deposition when he testified that he.could not lead a normal life.
Based on Ortega’s admissions, Jimenez’s counsel moved'to dismiss the case, arguing Ortega had perpetrated a fraud upon the court. In support of his motion, specifically the "timing of it, counsel argued that Ortega’s admissions on the stand constituted clear and convincing evidence that he lied.
Sensing the trial court had reservations about dismissing the entire claim, Jimenez’s counsel suggested the trial court consider dismissing those claims the fraud helped perpetuate, namely, the claims for pain and suffering and lost earnings. He argued:
The fact of the matter is, here is the plaintiff that attempted to defraud the system, perpetuating lie after lie after lie after lie. It’s the job of — of the Court, respectfully, at times to step in and determine what are those instances *487 that we’re going to hold the plaintiff accountable to their oath, what are those instances that we’re going to say, look, we have a-judicial system that requires integrity of a plaintiff and requires that they comply with their oath.
And when a plaintiff repeatedly lies, Your Honor, repeatedly lies, are we going to allow him to bring those claims to a jury when it’s evident that the reason why he was lying and the only-basis for that-lying was, to-try to -defraud .the system, try to get damages -that he clearly is not entitled to?
When you present that to a jury, Your Honor, he’s already succeeded.
The trial court took the motion under advisement and the trial continued. Ultimately, the jury returned a verdict in favor of Ortega, awarding him the total amount requested-for medical costs -and property damage, $136,828.45 for lost wages, and $186,614.84 for pain and suffering. Thereafter, the trial court entered a written order denying Jimenez’s motion to dismiss and rendered final judgment in favor of Ortega. This appeal followed.
“The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud on the court....” Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (citing Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992)). However, “the power of dismissal should’ be used cautiously and sparingly, and only upon the' most blatant showing of fraud, pretense, collusion, -or other similar wrong doing." Granados v. Zehr, 979 So.2d 1155, 1157 (Fla. 5th DCA 2008). Courts must “always be mindful of the constitutional' guarantee that the courts will be available to every person for redress of injury.” Id. (citing Art. I, § 21, Fla. Const.). Accordingly, while an appellate court reviews a trial court’s dismissal sanction for abuse of discretion, “[a] more stringent abuse of discretion standard is appropriate because dismissal is an extreme remedy.” Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003). Here, Jimenez argues that the trial court erred by failing to dismiss Ortega’s action despite Ortega’s admission that he repeatedly lied under oath about the severity of his injuries, the constant presence and degree of pain, his inability , to walk without assistance, his -inability to drive, his inability to lead a normal life, and his inability to work.
The scope of a trial court’s authority to dismiss a cause' of action as a sanction for a plaintiffs misconduct was outlined by this Court in Cox:
The requisite fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should “consider the proper mix of factors” and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because “dismissal sounds the ‘death knell of the lawsuit,’ courts must reserve such strong medicine for instances where the defaulting party’s misconduct is correspondingly egregious.” Id. at 1118. '
706 So.2d at 46. We concluded “where a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the-whole case is *488 proper.” Id. at 47 (citing Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011 (Fla. 4th DCA 1997)). Indeed, dismissal is proper in such circumstances because “[t]he integrity of the civil litigation process depends on truthful disclosure , of facts.” Id. . .
With that said, we have also held that misconduct falling short of the test espoused in Cox, including inconsistency, nondisclosure, poor recollection, dissemblance, ánd even lying may be insufficient to support a dismissal for fraud. Gautreaux v. Maya, 112 So.3d 146, 149 (Fla. 5th DCA 2013) (citing Perrine v. Henderson, 85 So.3d 1210, 1210 (Fla. 5th DCA 2012)). In many cases, such conduct may be well managed through cross-examination. See id., see also Gehrmann v. City of Orlando, 962 So.2d 1059, 1062 (Fla. 5th DCA 2007) (quoting Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003)). To warrant dismissal, there must be clear and convincing evidence of a scheme calculated to subvert the judicial process. Bologna v. Schlanger, 995 So.2d 526, 528 (Fla. 5th DCA 2008).
In this case, the only disputed issues involved Ortega’s claims for lost wages and pain and suffering. As to these issues, his lies were pervasive and significant, and. by their very nature, calculated to interfere with the judicial system’s ability to impartially adjudicate the matter by intentionally and falsely painting a picture of someone who was in constant and excruciating pain and incapable of working. Ortega’s fraud spanned the course of seven years and three depositions. Even when confronted with video surveillance showing him performing tasks he claimed he could not do, Ortega continued to perjure himself and exaggerate his.claims. His conduct cannot be countenanced.
As Jimenez correctly argues, the contested issues in this case rely almost entirely on Ortega truthfully reporting the severity of his pain, the limits on his activity, and the need for assistive devices to help him walk and perform daily activities. Unlike damages for medical costs and property loss, which are easily measured, claims for lost wages and pain and suffering are difficult to quantify because they involve an individual’s subjective point of view. Consequently, such claims are often difficult to defend against. Indeed, but for Jimenez employing the services of a private investigator, Ortega’s lies may very well have gone, undiscovered.
As we have previously stated, “[a] system that depends- on an adversary’s ability to, uncover falsehoods, is doomed to failure, which is why this kind of conduct must be discouraged in the strongest possible way.” Cox, 706 So.2d at 47. The only way to discourage it, however, is to punish it. Nevertheless,. we recognize defining the appropriate level of punishment may be difficult. .
Ortega’s sole argument on appeal relies on a policy favoring the adjudication of claims on their merits. He highlights the fact that he did not cling to false statements- throughout the proceedings, but rather ‘‘came clean”- at trial by admitting that the prior statements he made were false.[2] He contends, “[i]f the .trial court had dismissed the case after [he] came clean and admitted his false statements, and after the jury heard all the testimony, [he] .would have been in the same position as if he had never corrected his inaccurate comments.” He argues dismissing the ae *489 tion would subvert the purpose of a trial, which he ironically recognizes as a- search for the truth, in that it would provide no incentive for a less than truthful party to tell the truth in the future, This is nonsense. Consequences provide incentive for a party to be truthful at the outset.
“It is well-settled law ‘that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ "the very institution '[he] has subverted to achieve [his] ends.’.” Metro. Dade Cty. v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999) (quoting Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998)). Here, the trial judge was shocked about the extent and number of lies that Ortega had told, finding that they went on and on and on. Nevertheless, instead of sanctioning Ortega’s misconduct, the trial court did. nothing. This was an abuse of discretion.
As we have made clear, “[w]hen reviewing a case for fraud, the court should ‘consider the proper mix of factors’ and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system.” Cox, 706 So.2d at 46 (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). Utilizing this test, and based on the record before this Court, we agree that dismissal of the entire action as a sanction is unwarranted in light of the fact that this was an admitted liability claim where the damages for property loss and medical expenses were undisputed. However, because the record clearly establishes Ortega engaged in repeated, serious misconduct over a period of years, we conclude the integrity of the judicial system required dismissal of Ortega’s claims for lost , wages and pain and suffering. See id. By his .own conduct, Ortega forfeited the right , to have his case heard on these claims. See id.. at 47 (“Although .Cox insists on her constitutional right to have. her. case heard, she can, by her own conduct, forfeit that right.’,’).
Accordingly, we reverse the award for lost earnings and the award for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a pre-existing condition and loss of enjoyment of- life. We remand to the. trial court for entry of an amended judgment dismissing those claims and awards., In all other . respects, we affirm,
AFFIRMED in part; REVERSED in part; and REMANDED. ■ • -
SAWAYA and EDWARDS, JJ., concur.

. Ortega later clarified that he was in pain - when using a clutch, which is why he sold the Jeep and purchased' a truck with an automatic transmission.

. After a thorough review of the record, wé agree with Jimenez that Ortega’s decision to "come clean” at trial was a strategic decision designed to lessen the effects of Ortega’s lies on the jury, rather than "some sudden infusion of moral integrity or desire to correct past wrongs."