DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOAN BESELER** and **LUCILLE BESELER,**
Appellants,

v.

**AVATAR PROPERTY & CASUALTY INSURANCE COMPANY,**
Appellee.

No. 4D18-3148

[ March 4, 2020 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Peter D. Blanc, Judge; L.T. Case No. 502011CA001374.

George A. Vaka and Robert C. Hubbard of the Vaka Law Group, P.L., Tampa, and Kelly L. Kubiak and Eric W. Dickey of the Merlin Law Group, P.A., Tampa, for appellants.

Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, P.A., West Palm Beach, and Michael Rudd and Peter Diamond of Rudd Diamond, P.A., Hollywood, for appellee.

TAYLOR, J.

The insureds, Joan and Lucille Beseler, appeal the trial court's dismissal of their property insurance lawsuit for fraud upon the court. We reverse the order dismissing their claim and remand for further proceedings, because the insurer failed to establish by clear and convincing evidence that the insureds engaged in a scheme to defraud so as to warrant the extreme sanction of dismissal.

In December 2008, the insureds returned home to find water on the kitchen floor near the sink. The water damaged the floors and the cabinetry. The insureds submitted a claim under their homeowners' policy to their insurer, Avatar Property and Casualty Insurance Company.

The insurer sent an independent adjuster to inspect the loss. The adjuster inspected the property and submitted a loss report, which stated that the damage appeared to be caused by a water leak under the kitchen cabinets. The loss report estimated that the repair would cost $10,853.49.

The insureds submitted a counter repair proposal for $31,600.

The insurer accepted coverage and sent the insureds a check for $8,353.49, which represented the amount of its adjuster's estimate less the $2,500 deductible. The insureds deposited the check. Intending to dispute the estimated loss, the insureds hired a public adjuster, who notified the insurer that the insureds demanded an appraisal to settle the claim pursuant to the policy. The insurer then decided to further examine the claim.

In compliance with the insurance policy, the insureds submitted to examinations under oath nearly one year and five months after the loss. During the examination, Joan Beseler, who was 75 years old at the time and expressed difficulty remembering details surrounding the water damage, stated that she recalled looking underneath the sink to locate the source of the water and seeing water dripping from a pipe. She cleaned the water and tried to contact a plumber but was unsuccessful. A man she hired to clean the floors told her that the garbage disposal caused the water damage and that she should replace it with a new one.

Joan's daughter, Lucille, was also examined. She stated that the water appeared to be leaking from the garbage disposal. During discovery, the insureds provided the insurer with invoices for the floor and garbage disposal repairs that predated the claim of loss by one month.

In 2011, the insureds filed a petition to compel appraisal. After extensive litigation, the insureds moved to compel appraisal for the second time. The insurer withdrew its opposition and agreed to proceed with appraisal. After the appraisal panel awarded the insureds $30,225.21, the insureds moved to enforce the appraisal award. However, the insurer asserted new coverage defenses. The insureds then filed a breach of contract claim for nonpayment of the appraisal award.

The insurer deposed the insureds. Joan stated during her deposition that a pipe caused the water damage and that the water continued to leak after the disposal was repaired. Joan hired a plumber, who fixed the leak, but she could not remember the plumber's name. Lucille could not state with certainty that water came out of the garbage disposal; however, she did say that the water was gushing from that area under the sink.

The insurer moved to dismiss the action with prejudice for fraud upon the court. Specifically, the insurer argued that: (1) after the insureds' initial statements, the insureds changed their account of the cause of loss during their depositions; (2) the invoices regarding the garbage disposal

2

repair predated the cause of loss by a month, and (3) the insureds made prior fraudulent claims.

At the hearing on the insurer's motion, the insurer's plumbing witness testified that a garbage disposal will not leak unless water is running in the sink or dishwasher; likewise, the only other pipe under the sink would not leak unless water was running. The insurer also introduced letters from different insurance companies stating that the insureds had made prior unrelated claims for compensation and never made the repairs.

The neutral appraiser, who awarded the insureds $30,225.21, testified that a pipe leak or accidental discharge of water caused the water damage. The insureds did not testify at the hearing.

The trial court granted the motion to dismiss for fraud upon the court, ruling that the evidence provided at the hearing completely contradicted the position that the garbage disposal caused the water damage. The trial court noted that after five years of claiming that the garbage disposal caused the leak, the insureds suddenly stated that a pipe caused the water damage. The trial court found that these inconsistencies went to the heart of the claim and demonstrated the insureds' intent to defraud the court and the insurer.

The trial court denied the insureds' motion for rehearing and entered final judgment in favor of the insurer.

On appeal, the insureds argue that the trial court abused its discretion in dismissing their claim because the record does not demonstrate that the insureds knowingly entered a scheme to defraud the insurer and the court. We agree.

A trial court's dismissal of a claim for fraud upon the court is reviewed under a more stringent abuse of discretion standard, as the trial court's discretion is narrowed where dismissal is imposed as a sanction for fraudulent conduct. *Bob Montgomery Real Estate v. Djokic*, 858 So. 2d 371, 374 (Fla. 4th DCA 2003). The reviewing court should "consider the proper mix of factors and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system." *Gilbert v. Eckerd Corp. of Fla.*, 34 So. 3d 773, 776 (Fla. 4th DCA 2010) (citation and internal quotations omitted).

"The trial court has the inherent authority, in the exercise of its sound judicial discretion, to dismiss an action when the plaintiff has perpetrated a fraud on the court . . . ." *Kornblum v. Schneider*, 609 So. 2d 138, 139

(Fla. 4th DCA 1992).  The party moving the court to dismiss a claim for fraud upon the court must prove the fraud by clear and convincing evidence.  *Duarte v. Snap-on Inc.*, 216 So. 3d 771, 775 (Fla. 2d DCA 2017).  This sanction requires a clear showing of "fraud, pretense, collusion, or similar wrongdoing."  *Gilbert*, 34 So. 3d at 775 (citation omitted).  Put another way,

> the extreme sanction of dismissal should be imposed only where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier [of fact] or unfairly hampering the presentation of the opposing party's claim or defense."

*Id.* (quoting *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).

Such a drastic sanction should be used sparingly.  *Jacob v. Henderson*, 840 So. 2d 1167, 1169 (Fla. 2d DCA 2003).  "Dismissal sounds the death knell of the lawsuit," and courts should reserve this sanction for instances where the party's misconduct is correspondingly egregious.  *Aoude*, 892 F.2d at 1118 (citation and internal quotations omitted).

The fraudulent scheme perpetrated "must go to the very core issue at trial."  *Gilbert*, 34 So. 3d at 775.  In other words, the false testimony must be directly related to the central issue in the case.  *Morgan v. Campbell*, 816 So. 2d 251, 253 (Fla. 2d DCA 2002).

Conflict between depositions, interrogatories, and records disclosed during discovery does not warrant dismissal.  *Gilbert*, 34 So. 3d at 775.  "Except in the most extreme cases, where it appears that the process of trial has itself been subverted, *factual inconsistencies, even false statements* are well managed through the use of impeachment and traditional discovery sanctions."  *Ruiz v. City of Orlando*, 859 So. 2d 574, 576 (Fla. 5th DCA 2003) (emphasis added).

In *Gilbert*, the trial court dismissed the plaintiff's complaint that sought loss wage income based upon the inconsistency that plaintiff stated she worked for a company, when both her husband and the company owner stated the plaintiff never worked for the alleged company.  34 So. 3d at 774–75. We reversed the dismissal, reasoning that there was no allegation that the plaintiff's discovery answers were made with the intent to mislead the tribunal.  *Id.*

4

In *Herman v. Intracoastal Cardiology Center*, 121 So. 3d 583, 587–88 (Fla. 4th DCA 2013), the trial court dismissed the plaintiff's suit based upon evidence that showed that the plaintiff gave false testimony to the jury on core issues, kept evidence that would reveal his deception, and persuaded his daughter to support his false narrative. There, we affirmed the dismissal, holding that the collective evidence of falsehoods presented at trial were central to the case, and the trial court properly balanced the equities in its order, which noted that certain falsehoods were relatively minor. *Id.* at 589–90.

Here, the trial court abused its discretion in dismissing the suit because any inconsistencies between the insureds' statements regarding the cause of damage were not significant enough to warrant dismissal. These inconsistencies could have been well managed through impeachment and other less severe sanctions. The insureds stated during their examinations under oath that the garbage disposal leaked. However, Joan did also say that the water dripped from a pipe. Lucille said that it seemed that the garbage disposal caused the water damage. But during her deposition, she pointed to the area of the garbage disposal and stated only that the water was coming from that direction. Their testimony, though arguably inconsistent, does not show a scheme to defraud the court.

Neither of the insureds had plumbing expertise. Notably, whether it was the garbage disposal or the pipe that leaked, the general area of the alleged cause of the water damage was under the sink. Like the record in *Gilbert*, this record does not demonstrate or establish any intent by the insureds to mislead the tribunal.

Although certain repair invoices do predate the cause of loss by one month, this evidence does not show that the insureds intentionally attempted to mislead the court. Instead, this evidence could be used for impeachment purposes.

This case is unlike *Herman*, wherein we affirmed dismissal because the plaintiff purposely hid contradicting physical evidence, persuaded his daughter to give false testimony, and gave false testimony himself. Here, instead of concealing the contradicting invoices, the insureds voluntarily provided them to the insurer.

As we explained earlier, the collective inconsistencies regarding the cause of loss and repair can be well managed through impeachment or other traditional discovery sanctions; the alleged fraud did not subvert the trial itself. Because the insurer did not produce clear and convincing

5

evidence that the insurers entered a scheme to defraud the court, we conclude that the trial court abused its discretion by dismissing the suit for fraud upon the court.

We reverse the trial court's dismissal of the insureds' claim for fraud upon the court and remand for further proceedings.

*Reversed and Remanded.*

MAY and CONNER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***