995 So.2d 526 (2008)
Tracy BOLOGNA, a/k/a Tracy Hoffman, Appellant,
v.
Edwin SCHLANGER, etc., et al., Appellee.
No. 5D06-1017.
District Court of Appeal of Florida, Fifth District.
June 20, 2008.
*527 Marlene S. Reiss, and Cayla B. Tenenbaum, of Stephens, Lynn, Klein, Lacava, Hoffman & Puya, P.A., Miami, for Appellant.
Elizabeth C. Wheeler, of Elizabeth C. Wheeler, P.A., and Tiffany M. Faddis, of Law Office of J. Christopher Norris, Orlando, for Appellee.
PER CURIAM.
Tracy Bologna ["Bologna"] appeals the trial court's order dismissing her personal injury suit with prejudice for intentional and fraudulent conduct in responding to discovery. We conclude that the trial court erred in dismissing the claim without conducting an evidentiary hearing and reverse.
According to Bologna's deposition testimony, she was traveling on Apopka-Vineland Road in Orlando when her vehicle was struck by Edwin Schlanger's ["Schlanger"] vehicle in March 2000. The impact spun her vehicle around and it ended up in the median. Bologna was taken to Sand Lake Hospital with complaints of back and neck pain. She then went to a chiropractor, Dr. Lynch, but within a few days, the pain worsened and she returned to the hospital. She could barely move or dress herself. Bologna then went to see Dr. Goll, an orthopedist, for severe back pain, neck pain, and her inability to lift anything. She was unable to bend and was experiencing numbness in her legs that traveled from her hips down to her knees.
Bologna had an MRI and continued to be treated by Dr. Goll, who diagnosed a herniated disk. Bologna testified that she received epidural injections from Dr. Congliaro, yet she still continued to have pain and numbness from her hips down to her knees.
Four years later, on March 4, 2004, Bologna filed suit for the injuries sustained in the 2000 accident. Her deposition was taken on September 30, 2005. Bologna testified that in October 1998, she had been involved in another motor vehicle accident but it did not result in bodily injury and did not necessitate treatment:
Defendant's Counsel: All right. So as far as any prior auto accidents the only one you recall was back in 1998 where you didn't sustain any personal injuries or seek any medical treatment; is that right?
Bologna: Yes.
She also testified that she had never experienced back pain, neck pain, or leg numbness before the March 2000 accident. At the end of her deposition, she clarified that she had previously had back spasms, but they were unlike her current back pain.
Six weeks later, Schlanger's estate filed a "Motion to Dismiss Repeated Intentional and Fraudulent Conduct in Respondent to Discovery," contending that Bologna knowingly and deliberately made perjurious statements under oath in her *528 deposition or interrogatories to conceal information regarding prior back and neck injuries. The motion relies on records of Dr. Lynch reflecting that thirteen months after the 1998 accident, Bologna went to see Dr. Lynch, with complaints of back pain, neck pain, and numbness in her legs. Dr. Lynch's medical records noted that Bologna complained of "severe" or "very bad" lower back pain. These treatments continued for fifteen visits, the last occurring two weeks before the March 2000 accident.[1]
After hearing arguments from both parties in February 2006, but taking no evidence, the trial court rejected the suggestion that inconsistencies in Bologna's testimony could be explained by oversights or failed memory, and found by clear and convincing evidence that Bologna committed fraud on the court by knowingly and intentionally failing to disclose her previous treatment for the same conditions for which she sought damages in the instant action. The court entered final judgment for defendant, Schlanger, after granting the motion to dismiss.
As we have recognized, a trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court. See Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). Dismissal for fraud is warranted "where `it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.'" Gehrmann v. City of Orlando, 962 So.2d 1059 (Fla. 5th DCA 2007) (quoting Cox, 706 So.2d at 46).
We have tried very, very hard to explain, and to emphasize, that this power to dismiss a lawsuit for fraud is an extraordinary remedy found only in cases where a deliberate scheme to subvert the judicial process has been clearly and convincingly proved. Short of this, poor recollection, dissemblance, even lying, can be well managed through cross-examination. Gehrmann, 962 So.2d at 1062. A testimonial discrepancy is usually not enough; there should be clear and convincing evidence of a scheme calculated to evade or stymie discovery of facts central to the case. This will almost always require an evidentiary hearing. See Howard v. Risch, 959 So.2d 308, 312 (Fla. 2d DCA 2007); Myrick v. Direct Gen. Ins. Co., 932 So.2d 392 (Fla. 2d DCA 2006); Medina v. Fla. East Coast Ry., 866 So.2d 89 (Fla. 3d DCA 2004); Jacob v. Henderson, 840 So.2d 1167 (Fla. 2d DCA 2003); Simmons v. Henderson, 745 So.2d 1031 (Fla. 2d DCA 1999); Furst v. Blackman, 744 So.2d 1222 (Fla. 4th DCA 1999).
The trial court concluded, based on his review of the records of Dr. Lynch, that Bologna could not, in 2005, have misremembered the severity of her back pain in 1999 and 2000, and so she must have intended to perpetrate a fraud on the court. But there are multiple circumstances that militate against the ineluctability of that conclusion. Her deposition testimony was given several years after the events. She had the same treating chiropractor immediately before and after the 2000 accident, and the proximity of treatment by Dr. Lynch for both injuries may have contributed to confusion. A *529 clear line of what pain happened when and who treated what is not so easy to recall as it is to read when Dr. Lynch's records are examined. Also, it was Bologna herself who identified Dr. Lynch in her answers to interrogatories.[2] It is difficult to envision a scheme to conceal a prior injury that includes identifying the doctor who treated it. See Granados v. Zehr, 979 So.2d 1155 (Fla. 5th DCA 2008). There is also nothing else in the record to show the nature and extent of the problems Bologna suffered from the 1998 accident, such as whether she was unable to work. The trial court's decision was made exclusively on a comparison of the records of Dr. Lynch and the answers to very limited deposition questions. Having reviewed the same material examined by the trial court, we are unable to say that the Cox test was met. See Amato v. Intindola, 854 So.2d 812 (Fla. 4th DCA 2003).
Finally, we note that the deposition examination was very broad in scope with virtually no follow-up questions. Bologna asserts on appeal that the defense was already in possession of the records of Dr. Lynch when Bologna's deposition was taken, which would explain why the questioning on this point was so truncated. This record, as well as others, hints that there may now be a "fraud" strategy on the part of defense counsel. If a plaintiff denies a particular prior injury or treatment or pattern of pain, rather than probe in detail which may risk the jogging of the plaintiff's memorythe questioning on this point just stops until the inevitable motion to dismiss for fraud is ruled on. As we pointed out in Cox,[3] defense counsel's diligence or forensic skill is not the issue in a "fraud on the court" case. However, the fact that Bologna's answers to interrogatories were adequate for the defense to learn of her treatment for back pain by Dr. Lynch in 1999-2000 prior to her deposition is relevant to whether there existed a scheme to defraud. There are many questions in this case that the court cannot determine without an evidentiary hearing before the ultimate sanction of dismissal may be imposed. See Medina, 866 So.2d 89.
REVERSED and REMANDED.
ALVA, M.M., Associate Judge, concurs.
GRIFFIN, J., concurs, and concurs specially, with opinion.
THOMPSON, E.R., Senior Judge, dissents, with opinion.
GRIFFIN, J., concurring specially.
After examining so many of these "fraud on the court" personal injury dismissals and examining the burgeoning case law, I am struck by a couple of things. First, the bulk of these decisions now concern the failure to disclose; mostly prior injury, prior pain, prior treatment in a personal injury case. Especially, back pain. These decisions are often driven by what judges believe the plaintiff witness "could" or "could not" have forgotten. If the judge believes the witness "could not" have forgotten, then the information must have been fraudulently concealed. I am not persuaded that this is a very accurate method for deciding who should be allowed to prosecute their personal injury claim and who should not. A judge's understanding *530 of memory is mostly anecdotal, based on their own experience. I would guessthough again based on anecdote that the memory of most judges is better than the average person's. We all know that the capacity to remember and the categories of what we remember varies widely among individuals and depends on a number of common factors, such as age, stress, fatigue, emotion. I am skeptical that all of the plaintiffs in the recent profusion of "fraud on the court" cases are thieves and perjurers. Certainly the background of many of these individuals prior to becoming personal injury plaintiffs suggests otherwise.
Pain and medical treatment may be, for many, not so easy to recollect with accuracy. Just as some people seem to revel in every aspect of every medical event in their lives, past and present, and seem able to talk endlessly about it, others are the opposite. They do not want to recall it, prefer not to think about it and almost never discuss it. I would even wager that if judges were put to the testi.e. required to describe in detail their experiences of pain and medical care four years in the pastthey might be surprised at their own lack of accuracy. I just don't think having a judge pick between "could have forgotten" or "could not have forgotten," without more, is a fair or accurate way to decide these cases, especially when there is a jury waiting in the wings to exercise its historic function to decide credibility.
The second thing about these cases that surprises me is that, even after all of this fraud-on-the-court case law, attorneys for plaintiffs in these cases apparently are not preparing their clients for their deposition.
As a practicing attorney, I have had the experience of a well-prepared client/witness turning into a perfect stranger before my eyes, and I have no way of knowing what happened in this case before or during Bologna's deposition. But, it is hard to understand how a plaintiff could go into a deposition without a thorough review of her medical history. If defense counsel had the records, plaintiff's counsel should have had the recordsand should have known what was in them.
THOMPSON, E., Senior Judge, dissenting.
I respectfully dissent. Although I agree that the cases cited by the majority are pertinent to the issue pending before the court, I disagree with the conclusion reached.
The majority opinion narrows the issue to whether the trial court "erred in dismissing the claim without conducting an evidentiary hearing." Actually, I believe there are two issues raised in this appeal. The first is whether the trial court abused its discretion in dismissing the case with prejudice. If it did not, then the second issue is moot: whether the trial court was required to hold an evidentiary hearing before rendering its decision on the record before it.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
Whether Bologna's false discovery responses rise to a level justifying dismissal presents a close question that the trial court resolved by exercising its sound discretion. See Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). In Cox, we expressed doubt about the trial court's decision to dismiss, but because it was a very close case, we deferred to the trial court's judgment. Id. at 47. Significantly, this case is similar to Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002), where the trial court dismissed a personal injury *531 action for fraud on the court.[1] In this case, the appellant denied receiving treatment for any malady other than scoliosis, but in fact, received sixteen chiropractic treatments for neck or low back pain. Id. at 252. The trial court did not believe the appellant's oversights were based on failed memory. Id. at 253. Faced with similar facts, the trial court reached the same conclusion in this case. Bologna argues that the trial court erred and should have allowed the case to proceed, contending that the holding in Ruiz v. City of Orlando, 859 So.2d 574 (Fla. 5th DCA 2003), is dispositive. This case is distinguishable.
Ruiz involved a suit filed by a 72-year-old woman against the City of Orlando for injuries sustained when the vehicle she was riding in, as a passenger, hit a pothole. Id. at 575. Although denying that she had ever had a previous back injury, her medical records revealed that she had been treated for a back injury thirty-seven years before her accident in Orlando. Id. Based on this discrepancy, the City of Orlando moved to dismiss the case, asserting she committed fraud regarding her medical history. Id. The trial court granted this motion. Id. This court reversed, finding that the record only showed that Mrs. Ruiz had made conflicting statements. Id. at 576. It was not shown that she falsely testified about the true extent of her earlier injuries or that she was guilty of a knowing misrepresentation. Id. In making this determination, this court considered her age, the time between the accidents and her deposition answers. Id.
Here, however, Bologna made more than conflicting statements; she falsely testified that she had no pre-existing injuries before the subject accident, despite being treated for neck and back pain for a substantial period of time immediately before the accident. In its order, the trial court considered the nature of her injuries, her treatments, the time between the two accidents and the time between her treatment by Dr. Lynch and the accident that forms the basis of this appeal. Her misrepresentations, had they been successful, would have interfered with the jury's ability to adjudicate the central issue in the case: whether her injuries resulted from the subject accident. When a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction. See Austin v. Liquid Distribs. Inc., 928 So.2d 521 (Fla. 3d DCA 2006); Amato v. Intindola, 854 So.2d 812 (Fla. 4th DCA 2003); Distefano v. State Farm Mut. Auto. Ins. Co., 846 So.2d 572, 574 (Fla. 1st DCA 2003).
Bologna's failure to disclose that she had received multiple treatments for the same symptoms that she claimed in the instant action provided a factual basis for the trial court to conclude that she gave inaccurate answers with the intent to defraud. The record supports the trial court's determination that Bologna provided intentionally false deposition testimony and interrogatory answers. Where a case presents a close call, we should defer to the trial judge's discretion. Saenz v. Patco Transp., Inc., 969 So.2d 1145 (Fla. 5th DCA 2007).
Concluding, I believe the trial court had clear and convincing evidence before it to support the dismissal of the action with prejudice. See Cox v. Burke, 706 So.2d 43. More important, on these facts, I cannot agree that the trial court abused its discretion, and deprived Bologna of her constitutional right to access to the courts. Thus, the trial court's use of discretion was reasonable. See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (stating where *532 there is no strict rule of law applicable, a trial court is empowered to use its personal judgment, or discretion, to decide the issue as long as the exercise of judgment is reasonable).

THE TRIAL COURT DID NOT ERR BY NOT HOLDING AN EVIDENTIARY HEARING
The majority agrees with Bologna's argument that, even in the absence of a request for an evidentiary hearing, the trial court's dismissal without first conducting a hearing is reversible error. This argument is unpersuasive for two reasons. First, there is no rule, statute or case that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed. See McKnight v. Evancheck, 907 So.2d 699, 701 (Fla. 4th DCA 2005) (affirming the trial court's dismissal for fraud even though no evidentiary hearing was held). Second, this court and others have dismissed cases where fraud is alleged without requiring an evidentiary hearing. In Ramey v. Haverty Furniture Cos., Inc., 993 So.2d 1014, ___ (Fla. 2d DCA 2008), Judge Canady affirmed the dismissal of a case without an evidentiary hearing and detailed cases where trial courts had been upheld for dismissing cases for fraud on the court without an evidentiary hearing. Even the majority acknowledges that a hearing is not always required. As the majority states, "A testimonial discrepancy is usually not enough; there should be clear and convincing evidence of a scheme calculated to evade or stymie discovery of facts central to the case. This will almost always require an evidentiary hearing." (Emphasis added.)
Although the trial court here did not conduct an evidentiary hearing, it had a sufficient evidentiary basis for determining that fraud on the court had occurred. The trial court heard arguments from both parties and noted that Bologna was given a full opportunity to explain the discrepancies between her sworn responses in discovery and the pertinent medical records.[2] The trial court rejected her explanation and concluded that Bologna's statements in discovery concerning her prior medical history were fraudulent.
Since there is no bright line requiring a hearing to be held in every case, I would leave it to the discretion of the trial judge. Although advocates should strongly be encouraged to move trial courts to conduct evidentiary hearings to ensure that a sufficient evidentiary basis for dismissal is present, it is unnecessary to require an evidentiary hearing in every case. Therefore, I would hold that the trial court in this case did not abuse its discretion in dismissing Bologna's complaint with prejudice and an evidentiary hearing was not required in this case, nor should one be required in every case. Accordingly, I would affirm.
NOTES
[1] According to the records of Dr. Lynch, Bologna reported in 1999 that she had gone immediately after her October 1998 accident to Sand Lake Hospital's emergency room where she was examined and x-rayed.
[2] Schlanger complained that Bologna only identified Dr. Lynch in answer to interrogatory 15, which asked for the identity of physicians who treated for the accident at issue and did not list Dr. Lynch in response to interrogatory 16, asking for the identity of all medical care in the last ten years. Her counsel explained that she did not repeat the providers already identified.
[3] 706 So.2d at 47.
[1] Although an evidentiary hearing was held in this case, this does not militate in favor of the majority's conclusion, particularly given the record evidence before the trial court.
[2] During her deposition, Bologna was given an opportunity to explain her treatment with Dr. Lynch. She stated she saw Dr. Lynch one time for treatment and after that it was only for therapy. Bologna also testified that she only had two spasms before the 2000 accident. She failed to mention her subsequent treatment with Dr. Lynch and downplayed the extent of her year-long symptoms.