Taylor, J.,
dissenting.
I respectfully dissent. This case fails to present the type of egregious misconduct or extreme circumstance which would warrant dismissal with prejudice.
As the majority acknowledges, we apply a less deferential abuse of discretion standard when reviewing a dismissal imposed for fraud on the court.[1] See Bob Montgomery Real Estate v. Djokic, 858 So.2d 871, 374 (Fla. 4th DCA 2003). Although a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction only in extreme circumstances. JVA Enters., I, LLC v. Prentice, 48 So.3d 109, 113 (Fla. 4th DCA 2010). The requisite fraud on the court occurs where “it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). “Because ‘dismissal sounds the death knell of the lawsuit,’ courts must reserve such strong medicine for instances where the defaulting party’s misconduct is corre *591 spondingly egregious.’” Arzuman, 843 So.2d at 952 (citations omitted).
When imposing this harshest of sanctions, trial courts should weigh the “policy-favoring adjudication on the merits” with the need to “maintain the integrity of the judicial system.” Id. Except in the most extreme cases where it appears that the process of the trial has itself been subverted, simple factual inconsistencies and “even false statements” are well managed through the use of impeachment and traditional discovery sanctions. Granados v. Zehr, 979 So.2d 1155, 1158 (Fla. 5th DCA 2008); Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003). To support a dismissal, the court must find the “false testimony was directly related to the central issue in the case.” Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002).
Moreover, “if the motion to dismiss for fraud would not likewise survive a motion for summary judgment, the trial court should presume the matter not subject to dismissal.” Gilbert v. Eckerd Corp. of Fla., 34 So.3d 773, 776 (Fla. 4th DCA 2010); accord Jacob v. Henderson, 840 So.2d 1167, 1170 (Fla. 2d DCA 2003) (“The same facts for which this case was dismissed would not [support] a motion for summary judgment nor a motion for directed verdict, for there are questions of material fact.”).
The Fifth District’s decision in Cox v. Burke, 706 So.2d 43 (Fla. 5th DCA 1998), is one of the leading decisions on dismissals for fraud. In Cox, the trial court dismissed a plaintiffs legal malpractice action due to fraud on the court. The legal malpractice action was based on the defendants’ representation of her in an underlying medical malpractice claim. The plaintiff gave false or inconsistent information regarding her identity, whether she had a driver’s license, her social security number, and whether she had sustained any fractures or other trauma prior to the accident at issue. Id. at 45-46. The trial court dismissed the action with prejudice. Id. at 46. On appeal, the Fifth District reasoned that although some of the alleged fraud was unproven, the plaintiff “has been shown to have given many false or misleading answers in sworn discovery that either appear calculated to evade or stymie discovery on issues central to her case.” Id. at 47. Although the Fifth District expressed some doubt about the trial court’s decision to dismiss, the appellate court nonetheless deferred to the trial court’s judgment because it was a close case: “While this court might have imposed a lesser sanction, the question in this case is close enough that we cannot declare the lower court to have abused its discretion.” Id.
Case law after Cox has emphasized that “Cox presented an extremely unusual fact pattern, wholly unlike the more conventional impeachment issues that have shown up in some more recent decisions.... ” Ruiz, 859 So.2d at 576. Indeed, the Fifth District acknowledged that in Cox it had “apparently underestimated” the “seductive power” of the remedy of dismissal. Id. at 575. Therefore, subsequent cases “have tried very, very hard to explain, and to emphasize, that this power to dismiss a lawsuit for fraud is an extraordinary remedy found only in cases where a deliberate scheme to subvert the judicial process has been clearly and convincingly proved.” Bologna v. Schlanger, 995 So.2d 526, 528 (Fla. 5th DCA 2008). “A testimonial discrepancy is usually not enough; there should be clear and convincing evidence of a scheme calculated to evade or stymie discovery of facts central to the case. This will almost always require an evidentiary hearing.” Id. As Judge Griffin pointed out in her specially concurring opinion in Bolo *592 gna: “We all know that the capacity to remember and the categories of what we remember varies widely among individuals and depends on a number of common factors, such as age, stress, fatigue, emotion. I am skeptical that all of the plaintiffs in the recent profusion of ‘fraud on the court’ cases are thieves and perjurers.” Id. at 580 (Griffin, J., concurring).
In this case, the trial court concluded that Mr. Herman committed a fraud upon the court. However, as explained below, the alleged falsehoods or inconsistencies by Mr. Herman were either: 1) subjective assessments about his wife’s activity levels; 2) not actual inconsistencies at all; or 3) immaterial to the central issues in the case.
As a preliminary matter, there is no clear and convincing proof that Mr. Herman lied at trial about his wife’s activity levels before the surgery. Nor is there clear and convincing proof that he persuaded his daughter to lie at trial. Even with the trial court’s finding that Mr. Herman’s daughter and sister-in-law gave credible testimony at the evidentiary hearing, their testimony did not establish that Mr. Herman knew himself to be testifying falsely at trial about his subjective assessment of how active his wife was before the surgery. I fail to see how the trial judge — who did not preside over the original trial — could conclude, based solely on the testimony at the evidentiary hearing, that Mr. Herman gave false testimony at trial when he testified that his wife rode bicycles, went for walks, and danced. The testimony of Ms. Winograd and Mr. Herman’s in-laws established nothing more than their subjective opinion that Mrs. Herman was inactive and lethargic. Although Ms. Winograd claimed at the hearing that her mother “never” rode a bicycle and “never” took walks with Mr. Herman, she did not live with her parents and was not in a position to testify that Mrs. Herman never rode bicycles, went for walks, or danced.
Moreover, Mr. Herman’s trial testimony was also largely confirmed by the deposition of Mrs. Herman herself, which was taken before her death, wherein she testified that she and her husband would routinely take walks for exercise. Mr. and Mrs. Herman would have been in the best position to know Mrs. Herman’s activity levels before the surgery. And there has been no accusation that Mrs. Herman’s deposition testimony was fraudulent.
With respect to the claim that Mr. Herman persuaded Ms. Winograd to perjure herself, it is important to examine Ms. Winograd’s actual testimony at trial. In her brief testimony at trial, Ms. Winograd stated that her family would go bike riding when she was younger, that her mother “loved” music and dancing, and that after the surgery Mrs. Herman would have to sit down when Mr. Herman tried to dance with her. Assuming, as the trial court found, that Mr. Herman did stress to Ms. Winograd the importance of telling the jury that Mrs. Herman was active prior to the surgery, this would not constitute fraud unless he believed it to be false. It is also worth noting that the only person who has admitted to giving contradictory testimony in this matter is Ms. Winograd, a witness whose bias may have resulted from being cut out of Mr. Herman’s will. In short, rather than constituting clear and convincing proof of fraud, the dispute about Mrs. Herman’s activity levels involved conflicting assessments as to a largely subjective issue. This was a credibility dispute better left for a jury to resolve.
The trial court also found that Mr. Herman misled the jury when he testified at trial that the jacket he wore to court was purchased by Mrs. Herman. However, in *593 my view, this testimony was immaterial to the central issues in the case. Mr. Herman’s testimony at trial that he was wearing a jacket purchased by his deceased wife was completely irrelevant to any issue that was of consequence to the determination of the case. This testimony would have been properly excluded had there been an objection. Thus, it cannot be said that this testimony concerned a “central” issue in the case. In any event, although Ms. Winograd testified that Mrs. Herman did not purchase the jacket that her father wore at the 2006 trial, Mr. Herman again testified in his 2010 deposition that Mrs. Herman in fact purchased the jacket. Again, any alleged falsehood on this issue was a credibility dispute better left for cross-examination at trial.
The trial court also focused on three alleged inconsistencies between Mr. Herman’s diary[2] and his trial testimony: “This false testimony included when Miriam Herman developed kidney problems, the risks explained to the Plaintiffs at the time of the surgery and the option of having the surgery performed at a hospital in Miami.” However, contrary to the trial court’s findings, much of Mr. Herman’s trial testimony as to these matters either did not go to the heart of the claim or was not materially inconsistent with his diary. Thus, I disagree with the majority’s characterization of the diary as contradicting the previous trial testimony of Mr. Herman in “several key respects.”
To be sure, there was an inconsistency on the issue of when Mr. Herman remembered his wife developing kidney problems. Mr. Herman testified at trial that the first time he learned of any renal insufficiency in his wife was after the surgery, but in his diary (which he started keeping a few weeks before the surgery) he made several references to his wife experiencing kidney problems during her hospitalization before the surgery. This discrepancy, however, is not particularly pertinent to the medical malpractice claim. The entire theory of the plaintiffs case was that Dr. Silver negligently failed to get a nephrology consult in spite of clear signs that Mrs. Herman was having kidney problems before the surgery. Indeed, the second amended complaint specifically alleged that Mrs. Herman had a “known history of renal insufficiency” and that Dr. Silver failed to take proper precautions before the surgery in light of this renal insufficiency. Therefore, any inconsistency between Mr. Herman’s testimony at trial that the first time he learned of his wife’s renal insufficiency was after the surgery, and his notes in his diary mentioning the renal insufficiency a little over two weeks before the surgery, is the type of simple factual inconsistency best left for cross-examination. This inconsistency was not particularly material to the claim and cannot be deemed to have been a calculated scheme to interfere with the judicial system’s ability to adjudicate the matter impartially.
Second, Mr. Herman’s testimony regarding the doctors informing him and his wife of the risks of surgery was not actually inconsistent with his diary. Mr. Herman’s diary did mention some of the risks explained to the Hermans before the sur *594 gery. However, when Mr. Herman’s testimony at trial is read fully and in context, it was not inconsistent with his diary. His testimony at trial acknowledged that he and his wife consented to the ordinary risks attendant to the surgery, which included renal failure. He was merely suggesting in his testimony that he and his wife were not warned of, and did not consent to, the risks of surgery occurring as a result of the doctors doing something wrong. In any event, even if there were a discrepancy on this issue, it is hardly relevant given that the plaintiffs never asserted a claim that the surgery was performed without Mrs. Herman’s informed consent.
Finally, the alleged inconsistency regarding whether the surgery could have been performed at a university hospital in Miami does not go to the heart of the case. Any inconsistency on this issue is immaterial, as it would not unfairly hamper Dr. Silver’s defense. Indeed, the fact that Mrs. Herman could have gone to another hospital is not a defense at all to the medical malpractice claim. The entire basis for the lawsuit is that Dr. Silver negligently cleared her for surgery. The hospital where the surgery ultimately occurred was wholly irrelevant.
The cases where appellate courts have affirmed dismissals for fraud typically involved situations where the fraud was blatant or uncontroverted. See, e.g., Bass v. City of Pembroke Pines, 991 So.2d 1008, 1011-12 (Fla. 4th DCA 2008) (noting that the plaintiff “intentionally omitted significant information” on multiple answers and that “there was no excuse given for these blatant omissions”); Gilbert v. Eckerd Corp. of Fla., Inc., 34 So.3d 773, 776 (Fla. 4th DCA 2010) (distinguishing “cases where fraud or misrepresentation is un-controverted”). This case does not fall into that category. The case at bar presented conventional impeachment issues and was unlike the “extremely unusual fact pattern” in Cox, where “there was a significant amount of evidence suggesting that the court could not even be confident of who the plaintiff was, much less what had happened to her.” Ruiz, 859 So.2d at 576. Indeed, the evidence in this case “wouldn’t even support a summary judgment or directed verdict.” Id.
The majority’s holding, if taken to its logical conclusion, could seriously jeopardize the invaluable right to trial by jury. In my view, no reasonable trial judge would have dismissed this case for fraud, where many of the alleged inconsistencies did not pertain to central issues in the case, and where the remaining evidence regarding the alleged fraud failed to establish that Mr. Herman knew himself to be lying. “The power to resolve disputes over the truth or falsity of claims belongs to a jury.” Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003). As the Jacob court explained:
Trials result from factual disputes. In these disputes, the facts on one side are, at best, less true and, at worst, false or fraudulent. In nearly every intersection collision, there is only one person with the right of way. Is the fact that both drivers believe they had the right of way the result of fraud? If there are ten eyewitnesses to the collision and all agree driver A had the right of way, does that make driver B’s claim fraudulent and subject to dismissal?
Id. Here, the factual disputes regarding Mr. Herman’s alleged inconsistent or false statements should have been decided by a jury.
In sum, the nature and substance of any inconsistencies and contradictions in this case required the trial court to consider a lesser sanction, reflecting the proper balance between the policy favoring adjudication on the merits and the need to main *595 tain the integrity of the judicial system. See Suarez v. Benihana Nat’l of Fla. Corp., 88 So.3d 349, 353 (Fla. 3d DCA 2012) (“Even if the record in this case could give rise to some inference of willful or intentional conduct, the nature and substance of the inconsistencies and contradictions required the trial court to consider some lesser sanction, reflecting the proper balance of competing interests and appropriately tailored to address the party’s conduct and the resulting prejudice.”).
This case simply fails to present the type of egregious misconduct or extreme circumstance which would warrant dismissal with prejudice. Because I believe the trial court abused its discretion in imposing the sanction of dismissal, I would reverse.

. However, even applying an ordinary abuse of discretion standard, I would find that the trial court abused its discretion.

. It is not completely clear whether the trial court was, at least in part, relying upon Mr. Herman's failure to produce the diary in discovery as a ground for dismissal. If the trial court in fact meant to rely upon the failure to produce the diary as a ground for dismissal, this would have been error, as the trial court never issued an order compelling Mr. Herman to respond to the discovery. See Garvin v. Tidwell, — So.3d -, 2012 WL 5232224, 37 Fla. L. Weekly D2506 (Fla. 4th DCA Oct.24, 2012) (sanctions for a discovery violation are not an appropriate remedy where the opposing party did not file a motion to compel and the trial court did not issue an order compelling discovery).