910 So.2d 324 (2005)
Willie CROSS, Appellant,
v.
PUMPCO, INC., a foreign corporation, and Tarmac America, LLC, a foreign corporation, Appellees.
No. 4D03-3793.
District Court of Appeal of Florida, Fourth District.
September 14, 2005.
*325 Kimberly L. Boldt of the Boldt Law Firm, Boca Raton, for appellant.
Scott A. Mager and Elaine J. LaFlamme of the Mager Law Group, Fort Lauderdale, and George L. Fernandez of Wolpe, Leibowitz, Alvarez & Fernandez, Miami, for appellee Pumpco, Inc.
Kenneth P. Carman of Carman, Beauchamp & Sang, P.A., Boca Raton, for appellee Tarmac America.
SHAHOOD, J.
In dismissing appellant's complaint with prejudice based on fraud on the court, the trial court found that appellant misrepresented, during discovery, the nature of his injuries to his neck and shoulder from a prior accident and that he failed to disclose a 1995 accident. We hold that the trial court abused its discretion and remand with directions that appellant's complaint be reinstated.

Facts
In July 2002, appellant filed a two-count complaint against appellees, Pumpco, Inc. and Tarmac America, LLC (Tarmac) for injuries sustained in 1999 at a construction site where appellant was working. Appellant alleged that when a concrete pump exploded, he was struck by concrete mixture which rendered him unconscious and caused severe bodily injuries. Appellant claimed that he sustained injuries to the *326 left side of his neck and shoulder, lower back, left knee, right hand, right ring and middle fingers, and two broken teeth.
In interrogatories propounded upon appellant, appellant was asked whether he suffered from any "physical infirmity, disability, or sickness at the time of the incident," to which appellant replied "left knee injury." He was also asked to describe "each injury for which you are claiming damages" and any "injuries you contend are permanent," to which appellant responded "left shoulder, neck, lower back, left knee, right ring and middle finger permanent pain." Appellant was asked to list the names and addresses of "all other physicians, medical facilities, or other healthcare providers" by whom he had been examined or treated within the past ten years and state the date and condition of injury. Appellant responded: "Paul Jacobson primary physiciangeneral treatment, dates unknown, North Miami Beach; North Shore Hospital1995 for electrical burn; other doctors that I don't remember." Appellant also stated that he had not been the party to another lawsuit.
In his December 2002 deposition, Cross was questioned about prior accidents and injuries. He identified four prior accidents: (1) a 1983 automobile accident resulting in minor injuries to the right side of his back; (2) a 1991 slip and fall accident at the Miami International Airport involving "bruised back muscles (a workers' compensation claim was filed);" (3) a 1991-92 automobile accident involving "minor little back problems;" and (4) a 1995 electrical accident involving a left knee injury. For the 1991-92 accident, Cross stated that he was treated by chiropractor Marshall Bronstein for about three months. Cross also stated that he treated with Dr. Bronstein for the 1983 accident as well.
When asked whether there were any other accidents or injuries unrelated to the accident at issue, appellant replied: "I can't think of one now." Appellant also stated that Dr. Jacobson had been his primary physician for the past four years. When asked whether he had any prior problems with his neck and shoulder, appellant stated "never."
Following his deposition, appellees subpoenaed Dr. Bronstein's records. In a report, Dr. Bronstein stated that he treated appellant for injuries sustained in an accident occurring in 1995. At that time, appellant complained of pain in his neck, left shoulder, low back and groin. As past medical history, Dr. Bronstein noted appellant's 1995 electrocution accident, the 1991-92 accident and a 1991 accident. For the 1991 slip and fall accident, appellant stated that he was treated by Dr. Chase and that the injuries resolved with no permanent injury. For the 1995 accident, appellant treated with Dr. Bronstein for six months. As a final prognosis, Dr. Bronstein indicated that appellant suffered a permanent impairment as a result of the accident and that the accident caused damage to his cervical spine and lumbosacral spine as well as pain in his left upper extremity.
Dr. Chase's records confirmed that appellant was treated once for the 1991 slip and fall accident and once for the 1992 automobile accident. Dr. Chase's medical records indicated an injury to appellant's left shoulder.
As a result of appellant's responses to interrogatories and the medical records obtained, appellees moved to dismiss appellant's complaint on the grounds that appellant intentionally withheld information about the 1995 accident, the nature of his prior accidents, and the medical treatment he received.
*327 In particular, appellees alleged that while appellant acknowledged a 1992 automobile accident, he failed to state he was treated by Dr. Chase and failed to state his injury. Further, appellees alleged that the injuries sustained by appellant in the 1995 accident were the same injuries for which he was seeking redress in the instant case.
Appellant filed an affidavit in opposition claiming that he neither misrepresented any factual statements nor committed a fraud on the court. He stated that he admitted to four prior accidents and that he treated with Dr. Bronstein for the 1992 accident. He claimed that he had since been informed that the subpoenaed records showed that the accident occurred in 1995. He then stated:
7. I was in no way trying to deceive the court or defense counsel as to when the most recent prior accident took place. I answered to the best of my ability and memory.
8. When asked if I had injured my neck or shoulder area previous to this case, I answered, "no."
9. The question was submitted as a part of a string of questions involving injuries to body parts.
10. After reviewing prior medical records, which were not in my possession while completing my answers to Interrogatories, I realize that I was in fact treated for my neck and left shoulder as a result of the automobile accidents that occurred in the early and mid nineteen nineties. Further, I was not in pain or disabled in any way or sick in the immediate time period before this accident, except for my left knee.
11. At no time was I intentionally trying to hide this information.
12. When asked if I was suffering from physical infirmity, disability or sickness at the time of this accident I answered no except as to my left knee.
13. Again, that answer was truthful and not meant to deceive. I was not in pain or disabled in any way or sick in the immediate time period before this accident, except for my left knee.
Following the hearing on the motion to dismiss, the trial court granted the motion to dismiss.

Analysis
Appellant argues that he did not intentionally withhold information from the defense, but rather, was confused as to the date of the prior accident and did not recall the full extent of his injuries. He claims that he did not set upon some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter. He argues that the extent of his injuries and their relation to the present accident is a question for the jury. We agree.
While a trial judge has the inherent authority to dismiss actions based on fraud and collusion, this power of dismissal should be used "cautiously and sparingly," and "only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing." Distefano v. State Farm Mut. Auto. Ins., 846 So.2d 572, 574 (Fla. 1st DCA 2003). The party alleging fraudulent behavior must prove such by clear and convincing evidence. See id. Fraud occurs when it can be demonstrated, "clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (quoting Aoude v. *328 Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). When a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction. See Distefano, 846 So.2d at 574.
In Distefano, 846 So.2d at 574, relied upon by appellees, the court affirmed the dismissal of appellant's action, holding that appellant gave false information or omitted information on matters central to the issues in her lawsuit during discovery. In particular, she admitted to three prior accidents in deposition but failed to disclose a subsequent 1999 accident; appellant also failed to reveal the subsequent accident in interrogatories. Appellant also failed to reveal a prior shoulder injury sustained in a 1992 accident which opposing counsel discovered through medical records obtained through independent investigation. Appellant made misrepresentations and gave false information regarding the physical limitations she faced as a result of the accident, and she gave false information or made misrepresentations regarding prior similar injuries. See also Morgan v. Campbell, 816 So.2d 251 (Fla. 2d DCA 2002) (dismissal was appropriate where the plaintiff lied about prior injuries and treatment for neck and low back pain).
Distefano and Morgan represent examples of knowing deception intended to prevent the defense from discovery essential to defending the claim. See Amato v. Intindola, 854 So.2d 812, 816 (Fla. 4th DCA 2003); City of Hallandale v. Amato, 869 So.2d 538 (Fla.2004).
Unlike Distefano and Morgan, we hold that the trial court in this case abused its discretion in dismissing appellant's complaint where the alleged misconduct did not rise to the level warranting the imposition of such a harsh sanction. The evidence does not support the conclusion that appellant's failure to remember being treated for his neck and shoulder seven years prior to giving his deposition was an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate the matter. While appellant was ultimately incorrect in his recall of past events, he clearly did not intentionally seek to hide relevant information from opposing counsel as evidenced by disclosing a 1995 accident in his deposition and in providing opposing counsel with Dr. Bronstein's name, stating that he treated with him for three months, instead of six months. Further, in both his answers to interrogatories and at deposition, appellant acknowledged that he had a preexisting knee injury from a 1995 electrical accident which still caused him problems at the time of the current accident, and that he had injured his back in two prior automobile accidents, but that his back had gotten better by the time of the incident in question. Despite Dr. Bronstein's report indicating that appellant would have to guard against exacerbating his injuries stemming from the 1995 automobile accident, appellant was able to return to his construction job where he worked until the present accident occurred. Only after appellant reviewed his prior medical records did he recall that he had been treated for his neck and left shoulder.
Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, and even false statements, are well managed through the use of impeachment and traditional discovery sanctions. See Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003). Accordingly, we reverse and remand with directions to reinstate appellant's complaint.
Reverse and Remand with directions.
KLEIN and TAYLOR, JJ., concur.