LAGOA, J.
Ruby Hair appeals from the trial court’s order dismissing her personal injury suit with prejudice as a sanction for fraud upon the court. For the following reasons, we *768 reverse the trial court’s order and remand for reinstatement of the action.
I. FACTUAL AND PROCEDURAL HISTORY
On November 10, 2004, a truck driven by Richard Morton ran a stop sign at a high rate of speed and collided with the car driven by Ruby Hair. Hair filed a negligence action against Morton, which sought damages for the injuries she suffered from the collision.
The dismissal of this action stems from Hair’s discovery responses, as well as her deposition testimony. In response to interrogatories propounded by Morton, Hair replied, inter alia, that she “ha[s] had various physical infirmities including but not limited to hypertension and an STD but [she] was not suffering at the time of the accident.” She further claimed damages from the collision for injuries to her “head, upper back, lower back and herniated disk.” Her interrogatory response disclosed the names of the physicians who had treated her prior to and after her accident, as well as the medical facilities where she had received treatment.
At her deposition, Hair testified that she suffers from HIV/AIDS, and responded to the following questions:
Q. [Defense counsel:] Before November 10, 2004, were you having any kind of physical problems?
A. [Plaintiff:] No more than HIV.
Q. You are HIV positive?
A. Right.
Q. What other physical problems were you having?
A. None at all.
Q. Before this accident, had you ever had any problems with your low back?
A. No, not at all.
Q. Before this accident, had you ever had any problems with fatigue?
A. Never. No, I didn’t. I’m not for sure.
Q. You are not for sure about problems with fatigue but you are sure you didn’t have any problems with your low back?
A. Correct.
Q. Were you taking any medications at the time of this accident?
A. Yes. I was taking Lexvia.... Nor-vir.... Bactrim .... verapamil .... sulfates.... That is all I can remember right now.
* ⅜ * ⅜
Q. What was the reason that you were requesting to be determined to be disabled before this accident?
A. From the HIV.
Q. Were you ultimately determined to be disabled by Social Security?
A. Yes.
Hair was then questioned concerning her prior treatment at Jackson Memorial Hospital and Acevedo Medical Center:
Q. [Defense counsel:] [The answers to interrogatories] said you had been seen before this accident at [Acevedo] Medical. What were you seen there for?
A. [Plaintiff:] HIV.
Q. And Jackson Memorial Hospital
A. Then I turned over from Savado [sic Acevedo] to Jackson Memorial Hospital for that. Nothing else. Other than the HIV, I’m healthy. I would have been healthy.
Q. In other words, were you having any physical pains or aches associated with the HIV before this accident?
A. Just weakness. I had a lot of weakness. I was tired.
*769 * * * *
Q. Before this accident in November of 2004, had you ever been seen by a chiropractic physician?
A. No.
Q. Ever been seen by an orthopedic physician for any reason?
A. No.
In September 2006, Morton deposed Dr. Hector Rodriguez, who had treated Hair for HIV/AIDS at the Acevedo Medical Center from 2002 until shortly before the 2004 automobile accident. Dr. Rodriguez stated that he had prescribed Naproxin for Hair based on her complaints of muscle pain, joint pain and feeling tired. For her complaints of low back pain, he had prescribed Tylenol 3. She was also prescribed narcotic pain medication. Dr. Rodriguez testified that he treated Hair for generalized osteoarthritis and, shortly before the accident, completed a Social Security form stating that Hair suffered from HIV, hypertension and chronic low-back pain. He also testified that he had seen Hair for treatment at approximately forty appointments and that she had never visited him with a chief complaint of low back pain. At one examination, Dr. Rodriguez did make a finding of low-back tenderness of moderate intensity. However, he never ordered an MRI of Hair’s spine or a surgical consult concerning back pain. Dr. Rodriguez conducted a neurological exam that did not suggest a finding of neurological involvement that would cause radiating pain.
In December 2006, Morton filed a motion to dismiss Hair’s negligence claim as a fraud upon the court based on Hair’s answers to interrogatories, her deposition and Dr. Rodriguez’s deposition. Morton contended that Hair’s denials of any low back problems before this accident were untrue as shown by Dr. Rodriguez’s deposition, which allegedly revealed that Hair had significant orthopedic problems requiring long-term narcotic medication. The trial court granted the motion to dismiss with prejudice. This appeal ensued.
II. ANALYSIS
“A trial court’s power to dismiss a case based on fraud should be cautiously and sparingly exercised and then only on ‘the most blatant showing of fraud, pretense, collusion or other similar wrongdoing.’” Laurore v. Miami Auto. Retail, Inc., 16 So.3d 862, 864 (Fla. 3d DCA 2009) (quoting Young v. Curgil, 358 So.2d 58, 59 (Fla. 3d DCA 1978)). Indeed, the severe sanction of dismissal is appropriate only when it is established by clear and convincing evidence “that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party’s claim or defense.” Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)); see Laurore, 16 So.3d at 864; Villasenor v. Martinez, 991 So.2d 433, 435-36 (Fla. 5th DCA 2008). It cannot be overstated that dismissal of an action is a severe sanction, and should only be employed in extreme circumstances. “Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, even false statements are well managed through the use of impeachment and traditional discovery sanctions.” Gehrmann v. City of Orlando, 962 So.2d 1059, 1062 (Fla. 5th DCA 2007) (quoting Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003)).
The burden of proving that a party’s conduct warrants dismissal rests ■with the party alleging the fraudulent conduct. See Villasenor, 991 So.2d at 436; Cross v. Pumpco, Inc., 910 So.2d 324, 327 *770 (Fla. 4th DCA 2005). The evidence of fraud, however, must be clear and convincing to warrant dismissal. See Ibarra v. Izaguirre, 985 So.2d 1117, 1119 (Fla. 3d DCA 2008). “Meeting that burden will almost always require an evidentiary hearing.” Villasenor, 991 So.2d at 436. In this case, the trial court conducted a non-evidentiary hearing, and relied solely on Hair’s interrogatory responses, Hair’s deposition, and Dr. Rodriguez’s deposition (and exhibit 1 to said deposition).
While Hair’s discovery responses might preclude some of her claimed damages regarding her lower back, they do not address the issue of liability,[1] nor address all of Hair’s claimed damages so as to justify dismissal of her action. Indeed, any allegations against Hair regarding inconsistencies, non-disclosure or even falseness are more appropriately dealt with through cross-examination or impeachment before a jury — not through dismissal of her action.
Accordingly, we reverse the trial court’s order dismissing Hair’s complaint with prejudice, and remand with instructions to reinstate the complaint.
Reversed and remanded.

. It is undisputed that Morton ran a stop sign and collided with Hair's car.