# Third District Court of Appeal

## State of Florida

Opinion filed May 12, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1738
Lower Tribunal No. 11-17213
_____

**Compañia General Financiera y Desarrollo, S.A., etc.,**
Appellant/Cross-Appellee,

vs.

**BNP Paribas, S.A. f/k/a La Banque Nationale de Paris, etc.,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz and Norma S. Lindsey, Judges.

Ainsworth + Clancy, PLLC, and Ryan M. Clancy, John G.M. Ainsworth, and Yamila Lorenzo, for appellant/cross-appellee.

Holland & Knight LLP, and Rodolfo Sorondo Jr., Rebecca M. Plasencia, Adolfo E. Jimenez, and Brian A. Briz, for appellee/cross-appellant.

Before EMAS, C.J., and HENDON and MILLER, JJ.

HENDON, J.

The plaintiff below, Compañia General Financiera y Desarrollo, S.A. ("COFISA"), appeals from (1) an order finding that its breach of contract claim fails under applicable Nicaraguan law, (2) an order denying its motion for rehearing, and (3) the final judgment entered in favor of the defendant below, BNP Paribas, S.A., formerly known as La Banque Nationale de Paris ("BNPP"). BNPP cross-appeals from the "Order on Defendant's Motion to Dismiss the Amended Complaint and for Attorneys' Fees for Plaintiff's Fraud on the Court which the Court Treats as a Motion in Limine to Exclude Non-Authentic Documents." For the reasons that follow, we affirm the orders and final judgment appealed by COFISA, but reverse the order cross appealed by BNPP.

In 2011, COFISA filed suit against BNPP. In its amended complaint, COFISA asserted a breach of contract claim against BNPP, seeking to hold BNPP liable for five certificates of deposit ("CD" or "CDs"), totaling $578,846.33, that it allegedly purchased from BNPP.[1] These CDs were originally issued by Banco Central de Nicaragua ("Central Bank") to BNPP in the 1980s, and thereafter, in 1994, BNPP endorsed the matured CDs to

---

[1] The five CDs were issued between March 1982 and April 1984, with the March 1982 CD having a three-year maturity date and the remaining CDs having five-year maturity dates. As translated, the CDs are titled "Negotiable Certificates of Deposit."

COFISA.[2]  COFISA attached to the amended complaint, among other things, the CDs and the corresponding Contract for each CD dated March 12, 1982 ("Contract" or "Contracts"), which were executed on different dates although the Contracts were all dated March 12, 1982.  Each Contract includes a provision allowing the CD to automatically renew for up to twenty-five years.  In the amended complaint, COFISA also alleged that it filed a formal demand for payment against Central Bank, but Central Bank refused to make payment for the CDs.  Thereafter, COFISA attempted to collect payment on the CDs from BNPP, but BNPP refused to pay.

BNPP filed its answer and affirmative defenses, asserting that under Nicaraguan law, COFISA's breach of contract claim fails because (1) the CDs were endorsed without recourse, and (2) the claim is barred under the applicable statute of limitations.

BNPP moved to dismiss the amended complaint with prejudice as a sanction for COFISA's fraud on the court and sought an award of attorney's

---

[2] The amended complaint states that following the Sandinista revolution in Nicaragua in 1979, financial institutions were nationalized and the assets of foreign banks, including BNPP, were seized.  Further, "following much political pressure and negotiations with foreign creditor banks during the 1980s, the government of Nicaragua by and through the Banco Central de Nicaragua agreed to make partial payment to BNP PARIBAS" through the issuance of certificates of deposits.

fees. BNPP asserted that the Contracts attached to the amended complaint were fake documents manufactured during a time in which these purported Contracts were in the sole possession of COFISA. BNPP also asserted that COFISA manufactured dozens of letters purportedly sent between 1994 and 2011, to create a phony paper trail of communications to bolster COFISA's fraudulent claims against BNPP.

In January 2015, the trial court conducted an evidentiary hearing on BNPP's motion to dismiss for fraud on the court. At the hearing, BNPP presented the testimony of, among others, Gerald LaPorte, a forensic ink chemist and document dating specialist, and John Millard, the attorney who worked for the creditor banks when the CDs were issued.

LaPorte testified that based on his analysis of the original documents produced by COFISA, the Contracts "were not produced, created and signed on the purported dates." LaPorte based his expert opinion on the following cumulative findings:

- The Contracts did not have any staple holes, significant paperclip markings, or rust from paperclips.
- The CDs had typical aspects of an older document, such as authentic yellowing of the paper, natural aging, rust stains, deterioration around the periphery. In contrast, the Contracts did not have any of these signs of natural aging or of an older document, and they were printed on bright white paper that was not typically used in the 1980s.
- The Contracts had been spoliated with a dirt-like material to appear old, and LaPorte was 100% certain "that this is not

4

natural aging."

- The Contracts were spoliated after the lawsuit was filed in 2011 because the "original" Contracts he physically examined in 2012 contained significant staining, but the staining did not appear on the copies of the Contracts that were attached to either the complaint or amended complaint. In contrast, the staining that appeared on the CDs were captured in the photocopies that were attached to the complaint.
- The same blue ballpoint ink pen was used to sign the Contracts between 1982 and 1984, which is an indication that they were signed simultaneously.
- The font used in the Contracts was consistent with Courier New font, which was not introduced until 1993.
- The Contracts were prepared using ink jet printers, but ink jet technology was introduced in 1984, and the quality of the ink jet on the Contracts was not available until later.
- There was a small printing defect on the all five Contracts, indicating that they came from the same printer and were created contemporaneously.
- The letterhead on the Contracts had a slight tilt, which LaPorte determined was from electronic cutting and pasting; the logo used was not used until 2000 or 2001; and the letterhead on the CDs was different than the letterhead on the Contracts.

Millard's testimony reflects that he worked for Shearman & Sterling LLP, restructuring Nicaragua's foreign debt. As part of this project, the law firm kept structural files with execution copies of documents, which are the final version of the documents that were ultimately executed. One of those documents is the Certificate of Deposit Agreement dated March 12, 1982 ("CD Agreement") issued to BNPP, which Millard actually drafted. Millard's testimony reflects that the CD Agreement in the structural files were different from the Contracts attached to the amended complaint. For

5

example, (1) the CD Agreement in the structural files were in English, whereas the Contracts attached to the amended complaint were in Spanish, and (2) the CD Agreement in the structural files did not contain a twenty-five-year automatic renewal provision whereas the Contracts attached to the amended complaint had a twenty-five year renewal provision.

At the conclusion of the hearing, the trial court found that BNPP established by clear and convincing evidence that the Contracts attached to the amended complaint "are not authentic, original documents that were created and signed in 1982 and may not be used in this case." In doing so, the trial court credited the testimonies of, among others, LaPorte and Millard. The trial court, however, denied the motion to dismiss for fraud on the court.

BNPP moved for clarification of the trial court's oral ruling. At the conclusion of the hearing on the motion for clarification, the trial court stated that, although it held that the Contracts were not authentic, "[w]ho is responsible for that, specifically, there was not clear and convincing evidence to make that finding." The trial court then stated that it was treating BNPP's motion to dismiss for fraud on the court as a motion in limine, and it was excluding the evidence because they are not authentic.

6

Thereafter, the trial court entered the "Order on Defendant's Motion to Dismiss the Amended Complaint and For Attorney's Fees for Plaintiff's Fraud on the Court which the Court Treats as a Motion in Limine to Exclude Non-Authentic Documents," which BNPP has cross appealed.

BNPP moved for summary judgment, asserting that COFISA's claims for payment on the CDs are time barred under Nicaraguan law. BNPP asserted that CD Agreement is the contract that controls payment obligations for each CDs.

COFISA thereafter filed a second amend complaint, asserting that the CD Agreement refutes BNPP's statute of limitations defense. COFISA also alleged that after Central Bank entered into the CD Agreement and issued the five CDs to BNPP, BNPP thereafter unconditionally endorsed the five CDs to COFISA without any restriction or limitation as to its own liability for payment on the CDs. Further, under Nicaraguan law, BNPP's unconditional and unrestricted endorsement of the CDs makes BNPP jointly and severally liable with the issuer (Central Bank) for the payment obligations of the CDs.

The parties filed cross-motions for summary judgment. Following a hearing, the trial court entered an order denying both motions for summary judgment, but scheduled an evidentiary hearing to determine the applicable

7

Nicaraguan law. The trial court conducted the evidentiary hearing, during which the parties presented testimony and evidence to support their respective positions and admitted numerous exhibits. The trial court reserved ruling.

The trial court entered the twenty-seven-page Order on Nicaraguan Law, dismissing the second amended complaint with prejudice. The trial court concluded that COFISA's breach of contract claim against BNPP fails under applicable Nicaraguan law because (1) based on the timing of BNPP's endorsement, BNPP transferred the five CDs to COFISA without recourse, and (2) COFISA's claim is time barred. COFISA filed a motion for rehearing, and thereafter, the trial court entered the "Order Denying Motion for Rehearing and Entering Final Judgment" and the "Final Judgment by Judge." COFISA's appeal and BNPP's cross-appeal follow.

COFISA contends that the trial court erred in its application of Nicaraguan law.[3] We disagree.

"A lower court's application of a foreign jurisdiction's law is reviewed de novo." Claflin v. Claflin, 288 So. 3d 774, 777 (Fla. 1st DCA 2020); see also Transportes Aereos Nacionales, S.A. v. De Brenes, 625 So. 2d 4, 5 (Fla. 3d DCA 1993) ("A trial court's determination of foreign law is treated

---

[3] The parties agree that Nicaraguan law applies pursuant to the CD Agreement.

8

as a ruling on a question of law over which an appellate court exercises plenary review."). Based on our de novo review, we agree with the trial court's thorough and well-reasoned examination of Nicaraguan law, determining that BNPP's transfer of the five CDs to COFISA was without recourse, and (2) if with recourse, COFISA's claim was nonetheless time barred. Accordingly, we affirm the orders appealed by COFISA.

BNPP argues that the trial court erred by failing to dismiss the action with prejudice for fraud on the court where BNPP established by clear and convincing evidence that COFISA was responsible for the fraudulent unauthentic Contracts attached to the amended complaint.[4] We agree.

A trial court's ruling on a motion to dismiss for fraud on the court is reviewed under an abuse of discretion standard. However, as a dismissal for fraud on the court must be based on clear and convincing evidence, the abuse of discretion standard is "somewhat narrowed." See Diaz v. Home Depot USA, Inc., 196 So. 3d 504, 505 (Fla. 3d DCA 2016).

Dismissal for fraud on the court is an extreme sanction that is appropriate only where "it is established by clear and convincing evidence 'that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate a

---

[4] COFISA does not challenge the trial court's finding that the Contracts were not authentic.

9

matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Id. (quoting Hair v. Morton, 36 So. 3d 766, 769 (Fla. 3d DCA 2010) (quoting Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998)); see also Metro. Dade Cnty. v. Martinsen, 736 So. 2d 794, 795 (Fla. 3d DCA 1999) (quoting Hanono v. Murphy, 723 So. 2d 892, 895 (Fla. 3d DCA 1998)) ("It is well-settled law 'that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends.'").

In the instant case, COFISA presented evidence that the CDs and the Contracts had been in their exclusive possession since 1994. To explain why the Contracts showed signs of natural aging, but the CDs did not, the secretary to COFISA's board of directors explained that the Contracts were separated from their corresponding CD. After being separated, the Contracts were stored in a wooden filing cabinet, whereas the CDs were stored in a metal filing cabinet. This testimony, however, was contradicted by COFISA's president, who testified the CDs and the Contracts were stored together in a safe deposit box. Moreover, LaPorte's testimony reflects that the unauthentic Contracts were spoliated sometime after the lawsuit was filed in 2011, which was at a time when the Contracts and CDs

10

were in COFISA's exclusive possession.

Based on the evidence presented at the evidentiary hearing, BNPP established by clear and convincing evidence that COFISA was responsible for the fraudulent, unauthentic Contracts that were attached to the complaint and amended complaint. In perpetrating the fraud on the court, COFISA attached to its complaint and amended complaint fraudulent Contracts that were considerably more favorable than the contracts that were actually executed approximately thirty years ago. Therefore, we reverse the trial court's order denying the motion to dismiss for fraud on the court, and remand with instructions for the trial court to enter an order dismissing the amended complaint with prejudice for fraud on the court.

Affirmed, in part; reversed, in part, and remanded with directions.