858 So.2d 371 (2003)
BOB MONTGOMERY REAL ESTATE d/b/a Ocean & Intracoastal Properties, Appellant,
v.
Noreen DJOKIC and Jeannette Teufel, Appellees.
No. 4D02-3849.
District Court of Appeal of Florida, Fourth District.
November 5, 2003.
*372 Derek T. Montgomery, Lantana, for appellant.
Walter H. Djokic of McIntosh, Sawran, Peltz, Cartaya & Petruccelli, P.A., West Palm Beach, for appellees.
STONE, J.
Bob Montgomery Real Estate, Inc. (Montgomery), a real estate broker, sued Appellees, real estate agents, alleging tortious interference with contractual relationships. The trial court dismissed two counts of the complaint as a sanction against Montgomery, concluding that Montgomery had attached a forged and an altered document to its amended complaint. We reverse.
Although dismissal is an available remedy for knowingly submitting forged or altered documents with the intent to deceive, Morgan v. Campbell, 816 So.2d 251 (Fla. 2d DCA 2002), here, there is no evidence that Montgomery did so.
Montgomery hired Appellees as agents and, in that capacity, they entered into exclusive right of sale listing agreements with three real estate owners. When Montgomery later fired Appellees, the three property owners cancelled the exclusive listings. The counts as to two of the properties are the subject of this appeal.
Appellees had earlier moved to dismiss the amended complaint, arguing that the listing agreement on property at 826 Oyster Lane expired on September 17, 1998, well before the alleged tortious interference occurred. Montgomery filed a second amended complaint, attaching a form captioned "Change Form" to the listing attached as an exhibit, which purported to extend the length of the listing agreement of the Oyster Lane property.
Appellees charge that the owner's signature on the "Change Form" concerning the Oyster Lane property was forged. Attached to the motion to dismiss was an affidavit by the Oyster Lane property owner, denying that she signed the "Change Form." Appellees also charge that the listing agreement on another exhibit, the Austin Lane property, was altered. The copy of the listing agreement on the Austin Lane property reflects that the inception and termination dates had *373 been altered with white-out in order to extend the length of the contract.
An evidentiary hearing was held on Appellees' motion to dismiss as a sanction, at which defense counsel proposed that the dates on the listing agreement governing the Austin property were altered with white-out to extend the listing and contended that the owner's signature was forged on the "Change Form."
In response, Mr. Montgomery advised the trial court that he was not contesting the fact that the listing agreement for Austin Lane had white-out on it; however, he did not know who altered the document. Montgomery also testified that he had no knowledge concerning the allegedly forged signature on the "Change Form."
Appellee agent, Noreen Djokic, testified that she procured the listing for the Austin Lane property, but did not have access to the listing agreement after she was fired and denied altering the document. As to the Oyster Lane property, Djokic testified that the owner lived in Germany. Djokic admitted that there was a letter in the file that purported to be from her, written and faxed to the German owner, advising her that the listing agreement was going to expire and needed to be re-listed, but Djokic asserted that she did not remember writing the letter and had no recollection concerning whether the owner signed anything authorizing the extension of the listing.
Djokic admitted that she had access to the listing agreements before she left and conceded that the secretary in the office would occasionally handle the extensions of listing agreements. When asked whether the document was altered by Mr. Montgomery, she replied, "I don't have any idea who prepared it." Also concerning the Oyster Lane property, Djokic was asked, "Did you ever at any time obtain an extension from either of the owners?" She replied, "I don't know." When she was directly asked whether Montgomery forged the signature on the change form, Djokic responded, "I don't know. I don't know who filled it out." The parties stipulated that the Oyster Lane property was re-listed by Djokic while working for her new broker, the day after the extension expired as set forth in the allegedly forged "Change Form."
Montgomery testified that he did not white-out the dates on the Austin Lane listing agreement, but instead, found the document that way when the litigation began. In his answers to damage interrogatories filed five months before the defendants' motion to dismiss, he admitted that the expiration date of the listing agreement on the Austin Lane property should have been January 8, 1999, not the inserted later date. Montgomery notes that it would have been the agent's responsibility, not his, to procure the extension for any listing on the Oyster Lane property.
Appellees do not contend that Montgomery was the author of the forged or altered documents. Rather, the crux of the misconduct, which the trial court sanctioned, was that the documents were proffered as exhibits to the amended pleading, notwithstanding Montgomery's knowledge, gleaned in discovery, that they were not genuine. Appellees admit that the source of the additions to the documents remains open to speculation, with each side asserting only that the circumstances point to the other.
Appellees suggest that since Montgomery's answers to interrogatories concede that the expiration date on the Austin Lane contract was initially earlier than the altered date stated thereon, he therefore knew about the alteration and did nothing to advise the court of a possible fraud or to also submit an accurate copy of the unaltered *374 document. As for the alleged forged extension document executed on the Oyster Lane property, Appellees contend that if the exhibit existed, why was it not attached to the earlier complaint and amended complaint?
On the other hand, there is evidence that Djokic was in possession of the file and documents until she left and that she was responsible for submitting the listings to the multiple listing service. Montgomery notes that the multiple listing service will not accept a listing that is more than five days old and that when the expiration date was changed, the beginning date was also changed, coinciding with the date it was listed.[1] Montgomery also points to correspondence in the files indicating that Djokic and the Oyster Lane owner understood the listing was extended.
Although a dismissal imposed as a sanction is reviewed under an abuse of discretion standard, the trial court's discretion is narrowed where dismissal is imposed for fraudulent conduct such as that alleged here, in which a more stringent abuse of discretion standard is appropriate. Such sanction may be imposed only on a "clear showing of fraud, pretense, collusion, or similar wrongdoing." Tri Star Inv. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981); see also Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998).
The record reflects nothing but tenuous and conflicting evidence about the claims of misconduct. Given the equivocal testimony, we are guided by this court's recent, albeit distinguishable, opinion in Arzuman v. Saud, 843 So.2d 950 (Fla. 4th DCA 2003).
In Arzuman, the plaintiff offered conflicting testimony in which he claimed to own shares of stock in a corporation, but also claimed that the corporation was owned entirely by the defendant. See id. at 951. On this conflicting testimony, the trial court dismissed all of his claims with prejudice for committing perjury and fraud on the court. See id.
The court in Arzuman, discussing the standard of review, stated:
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18.
Id. at 952. The court also recognized that in those cases in which dismissal was upheld, "the claimants were attempting to conceal information by making statements under oath which were revealed to be false when the defendants uncovered the truth." Id.
In a similar case, Jacob v. Henderson, 840 So.2d 1167 (Fla. 2d DCA 2003), Mr. and Mrs. Jacob filed a personal injury action against a Hillsborough county sheriff after Mrs. Jacob claimed she was struck by the side-view mirror of a patrol car while she was a pedestrian. There, Mrs. Jacob's deposition testimony was in conflict with clandestine adverse videotapes. The trial court found the discrepancies between the claim and the tapes constituted *375 fraud and dismissed her case with prejudice. See id. at 1168.
In reversing the trial court's order, the Second District explained:
Viewing the facts before this court, Mrs. Jacob either knowingly perpetrated a fraud, exaggerated her injuries, or unknowingly provided video evidence that her injuries are far less severe than she may believe. Only the first of these three possibilities would support the dismissal of all claims with prejudice. See Baker v. Myers Tractor Servs., Inc., 765 So.2d 149 (Fla. 1st DCA 2000) (affirming dismissal because plaintiff knowingly, intentionally, and repeatedly concealed prior injuries to gain an unfair advantage in litigation). Trials result from factual disputes. In these disputes, the facts on one side are, at best, less true and, at worst, false or fraudulent. In nearly every intersection collision, there is only one person with the right of way. Is the fact that both drivers believe they had the right of way the result of fraud? If there are ten eyewitnesses to the collision and all agree driver A had the right of way, does that make driver B's claim fraudulent and subject to dismissal?
Id. at 1169.
The Second District found that such evidence, taken alone, is not clear and convincing that Mrs. Jacob had "`sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.' Cox, 706 So.2d at 46 (quoting Aoude, 892 F.2d at 1118)." This court, in a recent case, has come to the same conclusion on facts similar to those in Jacob. See Amato v. Intindola, 854 So.2d 812 (Fla. 4th DCA 2003). In Amato, we recognized that dismissal is properly utilized where a party knowingly misleads the other party, thereby interfering with the other side's ability to defend (or prosecute) by a knowing deception intended to prevent the essential discovery.
We conclude that, on the record, there is not a sufficient showing to conclude that Montgomery "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial systems' ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox, 706 So.2d at 46 (quoting Aoude, 892 F.2d at 1118). The issues in question are, therefore, left for resolution by the jury.
Accordingly, the trial court's order dismissing the two claims as a sanction is reversed, and the matter is remanded to the trial court.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] This was apparently first argued in a motion for rehearing.