# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**MICHAEL GLEMAN,**
Appellant,

v.

**MWH AMERICAS, INC.,** a foreign Limited Liability Corporation, **JACK McDONALD, ADAM WARD, STANTEC CONSULTING INTERNATIONAL, LLC,** a foreign Limited Liability Company, **HINTERLAND GROUP,** a Florida for profit corporation, and **DAN DUKE,**
Appellees.

Nos. 4D19-2280 and 4D19-2923

[January 6, 2021]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 50-2018-CA-010810-XXXX-MB.

Jennifer S. Carroll of the Law Offices of Jennifer S. Carroll, P.A., Jupiter; and Isidro M. Garcia of the Garcia Law Firm, P.A., West Palm Beach, for appellant.

C. Ryan Jones, Scot E. Samis and Richard A. Jarolem of Traub Lieberman Straus & Shrewsberry LLP, St. Petersburg, for appellees MWH Americas, Inc., a foreign Limited Liability Corporation, Jack McDonald, Adam Ward, and Stantec Consulting International, LLC, a foreign Limited Liability Company.

Andrew A. Harris of Harris Appeals, P.A., Palm Beach Gardens; and Ryan J. Wynne of Slinkman, Slinkman & Wynne, P.A., Jupiter, for appellees Hinterland Group, a Florida for profit corporation, and Dan Duke.

CIKLIN, J.

The appellant, Michael Gleman (plaintiff below), brings these consolidated appeals that involve the dismissal of Gleman's complaint, which the trial judge found to be a sham and, effectively, a fraud on the court. The dismissals were based on purported conflicts between (1) Gleman's allegations contained in the complaint and (2) assertions made

by Gleman in an earlier suit (not involving the same defendants). We find the trial court erred and we reverse for further proceedings.

After Gleman was suspended from his employment with the Palm Beach County Board of County Commissioners ("the county"), purportedly for making false statements during a meeting, he sued the county, alleging the suspension was based on his whistleblowing activities. The county then terminated his employment, maintaining that it had received complaints from contractors regarding Gleman's unsatisfactory job performance. Gleman amended his complaint to include the termination, and he alleged the termination was based on further whistleblowing activities that occurred after his suspension.

Ultimately, the county agreed to pay Gleman a significant sum of money to settle the case, and the suit was dismissed. The release executed pursuant to the settlement agreement provided that the "release shall NOT operate to bar any potential claim against any third party who has or had a contractual relationship with the County, or the employees of said parties, including MWH Global, now part of [Stantec], and Hinterland Group, Inc."

Gleman then sued the appellees, MWH Americas, Inc., Jack McDonald, Adam Ward, Stantec Consulting International, LLC, Hinterland Group, and Dan Duke (collectively, "the defendants") for tortious interference with a business relationship. In his complaint, Gleman disclosed that he had brought a whistleblower complaint against the county, "claiming that he was first suspended, then terminated, for making protected disclosures or otherwise participating in activities protected by law" and that the suit was settled. He alleged that the county's purported reason for suspending and ultimately terminating his employment was his unsatisfactory job performance, as charged by the defendants in communications they had with the county. He further alleged that, consistent with his job duties, he had objected to some of the payments requested by the defendants because they were improper, and that some payments were delayed for reasons not related to Gleman's satisfactory job performance. Gleman alleged that the defendants' communications to the county were "without justification, for the express purpose of undermining his status and interfering in his employment" with the county and that "[a]s a result of said conduct, [Gleman] was terminated from his employment, and suffered damages."

Hinterland Group and Dan Duke moved to dismiss the suit for fraud, or in the alternative, to strike the pleading as a sham. The remaining defendants moved to dismiss or strike the complaint as a sham pleading.

2

All defendants asked the trial court to take judicial notice of the filings in the first suit, including the pleadings, Gleman's deposition, and a transcript of the pre-termination hearing, among other things. The crux of the motions was that Gleman's allegations of causation in the two suits were in direct conflict: If he was terminated based on his whistleblowing activities, he could not have been terminated based on the defendants' complaints of his unsatisfactory job performance.

The trial court agreed with the defendants, finding that they "demonstrated by clear and convincing evidence that this complaint is a sham, and that the actions of [Gleman] set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate the matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." The trial court dismissed the case with prejudice and entered final judgments in favor of the defendants.

We must find the trial court erred in dismissing the suit based on findings that it constituted a sham pleading and a fraud on the court. Pursuant to Florida Rule of Civil Procedure 1.150, a trial court may strike a pleading as a sham. But "[b]ecause striking a pleading is an extreme measure, it is disfavored in the law." *Upland Dev. of Cent. Fla., Inc. v. Bridge*, 910 So. 2d 942, 944 (Fla. 5th DCA 2005).

> A pleading is considered a sham only "when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue." *Rhea v. Hackney*, 157 So. 190, 193 (Fla. 1934). Thus a sham pleading is one "good on its face but absolutely false in fact." *Id.* at 194.

> For a trial court "to justify the striking of a pleading for being sham or false it must be so undoubtedly false as not to be subject to a genuine issue of fact." *Meadows v. Edwards*, 82 So. 2d 733, 735 (Fla. 1955). The motion to strike a pleading as being a sham "should be tested by the same standards as a motion for a summary judgment . . . ." *Id.* For a trial court to strike a pleading as a sham the "falsity thereof [must] clearly and indisputably appear[]. . . . [I]t must evidently be a mere pretense set up in bad faith and without color of fact." *Rhea*, 157 So. at 193. Finally, "[i]n reviewing a motion to strike a pleading as sham all doubts are to be resolved in favor of the pleading." *Furst v. Blackman*, 819 So. 2d 222, 225 (Fla. 4th DCA 2002).

3

*Bornstein v. Marcus*, 169 So. 3d 1239, 1242 (Fla. 4th DCA 2015) (alterations in original).

As is the case in summary judgment proceedings, "[a] hearing on a motion to strike pleadings . . . is not to try the issues, but to determine whether there are any genuine issues to be tried." *Sunex Int'l. Inc. v. Colson*, 964 So. 2d 780, 782 (Fla. 4th DCA 2007) (quoting *Meadows*, 82 So. 2d at 735). "The fact that a court may perceive little prospect in the success of an alleged sham proceeding is not a sufficient ground to grant a motion to strike the pleading." *Id.* (quoting *Cromer v. Mullally*, 861 So. 2d 523, 525 (Fla. 3d DCA 2003)).

A dismissal for fraud "may be imposed only on a 'clear showing of fraud, pretense, collusion, or similar wrongdoing.'" *Cherubino v. Fenstersheib & Fox, P.A.*, 925 So. 2d 1066, 1068 (Fla. 4th DCA 2006) (quoting *Bob Montgomery Real Estate v. Djokic*, 858 So. 2d 371, 374 (Fla. 4th DCA 2003)). Due to the extreme remedy of dismissal, "the fraud must be demonstrated by clear and convincing evidence." *Id.* at 1068-69 (quoting *Arzuman v. Saud*, 843 So. 2d 950, 952 (Fla. 4th DCA 2003)). The movant must show that "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* at 1069 (quoting *Cox v. Burke*, 706 So. 2d 43, 46 (Fla. 5th DCA 1998)).

Here, when the allegations of the tortious interference suit are read in their entirety, Gleman's allegations of causation are ambiguous and thus not necessarily incompatible with the assertions of causation he made in the first suit. Read one way, Gleman could be alleging that he was terminated based solely on the defendants' complaints regarding his job performance. Such an allegation would be at odds with Gleman's assertions throughout the first suit that he was fired solely for his whistleblowing activities. However, when all of the allegations of the tortious interference suit are read together, Gleman seemed to be alleging that the defendants acted vindictively because he stood in the way of their attempt to improperly bill the county, and that because of their ill will toward Gleman, they made unjustified complaints about Gleman's job performance, which the county used as cover for its actual reason for the termination of Gleman's employment—his whistleblowing activities. This is not clearly articulated in the pleading, but it is suggested. Additionally, Gleman's counsel explained the causation theory during one of the hearings and in his responses to the defendants' motions.

4

The defendants compare this case to *Bailey v. State Farm Mutual Automobile Insurance Co.*, 789 So. 2d 1181, 1182 (Fla. 4th DCA 2001), a case where two lawsuits arose out of a collision between an automobile and a motorcycle on which the complainant was a passenger. In the first suit, the complainant had taken the position that the accident was not caused by the driver of the motorcycle, her significant other, and that the driver of the automobile caused the collision. *Id.* at 1183. The case was settled. *Id.* at 1182. In the second suit, the complainant alleged that both the driver of the motorcycle and the driver of the automobile were at fault. *Id.* The appellate court affirmed the summary judgment entered in favor of the insurance company based on equitable estoppel. *Id.* at 1183.

This case is distinguishable in two respects. First, this is not a case where the allegations in the subsequent suit are unambiguous and directly at odds with the allegations of the first suit. Second, the issue raised in this case is whether Gleman's pleading constituted a sham or fraud on the court, not whether a summary judgment was justified based on estoppel principles.

At bottom, given the ambiguity in Gleman's pleading, the defendants did not establish that Gleman's tortious interference suit was "palpably or inherently false." Nor did they demonstrate that Gelman "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." To the extent the litigation below suggests the possibility of procedural bars to bringing suit and possible defenses, the trial court should be the court of first instance to adjudicate any such issues if they are properly raised. The only issue raised in this appeal—and thus the only one we entertain—is whether the trial court erred in finding the pleading amounted to a sham and a fraud on the court.

Based on the foregoing, we reverse and remand for further proceedings. Because we reverse, Gleman's other arguments on appeal are moot and need not be addressed.

*Reversed and remanded for further proceedings.*

GROSS and CONNER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

5